Price, J.
Considerable argument is made in the. brief of plaintiff in error, regarding the form of action assumed in the petition against it in the court of common pleas. It was urged in that court, and it is argued here, that the action is upon a written contract, for the breach of which recovery was sought, and it appears from several averments of that pleading, that a contract for shipment of the horses from Warren, Ohio, to Wooster of the same state, their safe transportation and delivery to C. F. Frazier, one of the owners, was entered into by the Pittsburg & Western Railway Company and the defendants in error, and that this contract was binding not only upon that company, but on its connecting lines, and that when the horses reached the lines of the latter company, it undertook under said contract to safely carry and deliver the animals to O. F. Frazier at Wooster; that breach was made, in that the latter company did not properly care for one of the horses, known as Fred S., and through the negligence and wrongful acts of its employes, the said Norse was so injured at Lodi tNat his death resulted. Such is the substance of the averments referred to. But the petition does not allege that the contract was reduced to writing'. It was disclosed in the evidence •of Frazier, that there was some writing signed upon the subject. The railroad company insisted that when it appeared there was a written contract for ■the shipment, it must be produced and put in evi *312 deuce by the plaintiff before he was entitled to recover. The plaintiffs below did not introduce any written contract, and when their case was rested the defendant moved the court to direct a verdict in its favor, which the court declined to do.
In this we think no error was committed. It must be remembered, that the reply denies that the contract plead in the answer was ever executed by the plaintiffs or Frazier, and in his testimony, Frazier insisted he had not signed such contract, — that he had signed no paper except' the bill of lading. As long as that matter was in dispute by the pleadings and also in the evidence, it would have been error to have granted the motion. The plaintiffs had introduced evidence tending to establish a liability. The defendant then introduced its exhibit 1, and gave evidence tending to prove that it was the contract executed by the parties for the transportation of the horses.
The plaintiffs contended that their action was not founded on contract, but sounded in tort, and they were not required to prove a contract in writing or parol. It seems that the trial court took this view of the case, and charged the jury, “that the action is not based upon contract for shipment, but is based on specific acts of negligence, or wrongful conduct of the defendant’s servants and employes in operating a car against the car in which the horse was, with such force and violence as to cause an injury and death to the horse * *
For the purposes of this proceeding in error, it is .not very material which theory of the action is correct. The alleged contract became a part of the evidence, although introduced by the defendant. If *313 the action was on a contract for safe carriage and delivery, the breach consisted in the negligent acts of the employes of the defendant which caused the injury. If the action sounded in tort, the same acts of negligence constituted the tort, and we pass the questions so fully discussed by counsel, without further observation, and take up the material ground of controversy.
The testimony introduced by the plaintiffs tended to prove that the value of the race horse, Fred S., at the time of his injury and death was $1,200. The contract known as defendant’s exhibit 1, and which was introduced by defendant company, had the following important provision:
“Uniform Live Stock Contract.
“Warren, Ohio, Station, Sept. 8, 1900.
“This agreement made this eighth day of September, 1900, by and between the Pittsburg & Western Railway Company, hereinafter called the carrier, and C. F. Frazier, hereinafter called the shipper, witnesseth': That the said shipper has delivered to said carrier live stock of the kind and number^ and consigned and destined by said shipper as follows: Consignee, destination, etc., C. F. Frazier, Wooster, Ohio. Number and description of stock, 3 horses— weight subject to correction, 10,000. * * *
“That said shipper, or the consignee, is to pay freight thereon to the said carrier at the rate of twenty-two cents per hundred weight, which is the lower published tariff rate based, upon the express condition that the carrier assumes liability on said live stock to the extent only of the following agreed valuation, upon which valuation is based the rate charged for the transportation of the said animals, *314 and beyond which valuation neither the said carrier nor any connecting carrier shall be liable in any event, whether the loss or damage occur through the negligence of said carrier or connecting carriers or their employes, or otherwise.
“If horses or mules — not exceeding one hundred dollars each. ’ ’
■ Then follows a provision for the carriage of the person in charge of the stock. •
Next is the,provision: “ 0. F. Frazier does hereby acknowledge that he had the option of shipping the above live stock at a higher rate of freight according to official tariffs, classifications and rules of the said carrier and connecting lines, and thereby receiving the security of the liability of the said carrier and connecting railroad and transportation companies as common carriers of the said live stock upon their respective roads and ships, and has voluntarily decided to ship same under this contract at the reduced rate of' freight above first mentioned. ’ ’
This contract was signed by the Pittsburg & Western Railway Company by its station agent, and it bears thereunder the name of C. F. Frazier.
Pleading this contract, and introducing it in evidence, the defendant company claimed and now claims, that if liable at all to the plaintiffs, the liability did not exceed the sum of one hundred dollars. The plaintiffs below claimed and claim here, that Frazier did not execute the contract, and that if he did, it is invalid and against public policy. Whether he executed the contract on behalf of the owners of the horse, was a question of fact for the determination of the jury, under the rules of law as we shall hereafter determine them. Hence the legal question *315 arises, is the stipulation relied upon by the carrier in this case valid in law, if properly signed? Is it competent for the railroad company to thus limit the amount of its liability for loss or damage, in consideration of the reduced rate of transportation? It is not a contract of exemption from liability for the negligence or wrongful conduct of the company or its employes, and its terms cannot be construed to provide for any such exemption. If it did undertake to so provide, it would be condemned as invalid, by a uniform current of authority. A common carrier cannot save itself from liability for its negligence and wrongful acts, by any contract to that effect. But that is not the question here, and it seems that the trial court needlessly confused our question with the well settled law as above stated.
The railroad company is not striving to escape payment of any sum on account of its negligence, but to limit the amount of recovery to an agreed valuation, in case of loss or damage as the result of its negligence, or otherwise. .
It is urged that under the law as held by the courts of this state, no such limitation is valid, and the following cases are cited: Davidson v. Graham et al., 2 Ohio St., 132-3; Graham & Co. v. Davis & Co., 4 Ohio St., 362; Welsh v. Railroad Co., 10 Ohio St., 65. We think neither ease holds what is contended for it. ’Instead of reviewing each of them, it will be sufficient to adopt the remarks of Scott, J., in Welsh v. Railroad Co., 10 Ohio St., 65, where he comments on Davidson v. Graham et al. supra, and Graham & Co. v. Davis & Co., supra. On page 70 of the opinion it is said, after referring to those cases: “But that the liability of the carrier may be qualified and *316 limited by special contract, is well settled. It is true that even this right was denied upon grounds of public policy, in New York, in the case of Cole v. Goodwin, 19 Wend., 254, and in the subsequent case of Gould v. Hill, 2 Hill, 623. But these cases have since been overruled. * * * The authority of Gould v. Hill was also denied by the Supreme Court of the United States in the case of the New Jersey Steam Nav. Co. v. Merchants’ Bank, 6 Howard, 344. That such restriction may be provided for by contract, has been affirmed in this state in the cases already referred to, in 2 and é Ohio State Reports.”
Throughout the opinion, especially on pages 74 and 75 the doctrine of the former cases was restated and adopted to the effect, that while a common carrier cannot relieve himself to any extent by special contract, from losses occasioned by his own neglect, he may by “contract restrict his liability as an insurer against losses arising from mistake, or unavoidable accident against which human prudence could not provide. ”
This of course does not include the right of the carrier to arbitrarily limit liability for either acts of negligence or the amount of liability in case of loss of or damage to the property consigned. Nor does it extend to mere notices given by the carrier to the shipper that a limited liability is being contracted for when the shipment is made. • The transaction must amount to a contract on the subject, wherein the minds of the parties meet as in the making of other contracts.
We have also considered the case of United States Express Co. v. Bachman. It does not determine our question, nor does it purport to modify or overrule *317 the earlier eases already noticed. In fact the validity of the precise stipulation contained in the contract under consideration in this case, has not been passed on by this court. There are important facts in Express Co. v. Bachman, supra, which distinguish that case from the one before us. One of the facts in that case and which was regarded as material, is that while the bill of lading provided that the carrier should not be liable beyond an amount named therein, it was understood-by the parties that the sum so agreed on as to the amount of liability, was much less than the value of the goods. On page 150 of the'opinion this court quotes from the bill of exceptions the following: “It was admitted by the defendant that the whisky in question, at the time and place of shipment, was of much greater value than $20.00 per barrel, and that the defendant knew that fact at the time. ’ ’
The case at bar is different, the contract relied on by the railroad company is not a bill of lading, although such a bill did accompany the special contract and was issued at the same time. The value alleged to have been agreed upon in the special contract was $100 for each of the horses. There is nothing in the record to indicate that it was made known to the agent of the company where the shipment was made, that the horses were race horses of peculiar or greater value, and for the ordinary common horse, the value agreed upon would not be regarded as' unusual, and -it may be inferred from the facts,' or rather want of facts in the record, that the carrier was undertaking to carry horses of the value stipulated. On page 156 of Express Co. v. Bachman, the court gave weight to the fact in that case, that the *318 carrier admitted that the whisky was worth much more than $20.00 per barrel, and said: “Carriers may by contract limit their liability at common law for damages or loss arising from other cause than negligence of themselves, or their servants. They cannot, however, as liquidated damages, where it is understood by the parties the sum agreed on is less than the value of the goods -determined in advance, the quantum, of damages for loss occasioned by negligence.” We think the points of difference between that case and the one at bar are sufficiently prominent to minimize its influence upon our judgment.
Another and later case is cited: Railway Co. v. Sheppard, 56 Ohio St., 68. Our exact question was not involved in that case, as will appear from its statement of facts, and from the opinion of Williams, C. J.
Counsel for defendant in error cite Adams Express Co. v. Schwab & Bro., 53 Ohio St., 659. It is an unreported case affirming the lower court, Shauck, Burket and Spear, JJ., dissenting. It is not clear on what ground the judgment was affirmed, and we are not at liberty to speculate concerning the reasons for the affirmance.
The Pennsylvania Co. v. Yoder et al., 25 O. C. C., 32, is also cited. We are aware that the circuit courts of the state are not in harmony on the question before us and have reached conflicting judgments, as is shown by Railway Co. v. Simon, 15 C. C. R., 123. Those two cases are in direct conflict and cannot be reconciled.
Having noticed in a brief way the preceding decisions in this state, we are inclined to think, that the *319 conclusions we reach are not in conflict with former holdings of this court, although some of the latter are not entirely clear as to their scope. In this case, besides the bill of lading, the railroad company plead and contend, that in consideration of a reduced freight rate for the transportation of the horses, their owner entered into a written. special contract with the company wherein a valuation for shipping purposes was agreed upon beyond which the company would not be liable for loss or damage on account of negligence or any event. The value so agreed upon was not known to be unusually low, and below their real value. The shippers, under this contract, if they made it, obtained a low rate of transportation for which they were willing to allow the carrier to place a money limit on its liability. It is not a stipulation to exempt from liability for negligence, but a limit on the amount of liability for which the carrier should respond in case of loss or damage. “This limitation as to value has no tendency to exempt from liability for negligence. It does not induce want of care. The carrier is bound to respond in that value for negligence. The compensation for carriage is based on that value. The shipper is estopped from saying that the value is greater. The articles have no greater value for the purposes of the contract of transportation between the parties to that contract. The carrier must respond for negligence up to that value.
It is just and reasonable that such a contract, fairly entered into and where there is- no deceit practiced upon the shipper, should be upheld. There is no violation of public policy. On the contrary it would be unjust and unreasonable, and would be *320 repugnant to the soundest principles of fair dealing and of the freedom of contract, and thus in conflict with public policy, if a shipper should be allowed to reap the benefit of the contract if there is no loss, and to repudiate it in case of loss.” So said the Supreme Court of the United States in Hart v. Railroad Co., 112 U. S., 340-341. The contract there considered is like the one here. That case reviews and discusses the subject thoroughly, and cites the eases arrayed, on each side of the controversy. It holds that the greater weight of authority and the better reasoned cases support the doctrine there announced. If the contract is induced by fraud or deception, or unfairly made and not understood by the shipper, a different rule will govern, as decided by the same cases.
In Alair v. Railroad Co., 53 Minn., 160, it is held: “The owner of some horses delivered them to a common carrier for transportation under a contract signed by him stating the terms and conditions upon which the property was to be transported, by which it was agreed ‘that the value of the live stock to be transported under this contract does not exceed the following mentioned sums, to-wit: each horse $100 * * * such valuation being that whereon the rate of compensation to the company for its services and risk connected with said property is based.’ Held, that, assuming that the contract was fairly made for the purposes therein expressed, (the sums named being approximately the average values of ordinary domestic animals), this was a just and reasonable mode of securing a due proportion between the amount for which the carrier becomes responsible and the freight which he receives, and of protecting *321 himself against extravagant valuations in ease of loss, and that the recovery of the owner will he limited to the sums named, even although the loss occurred through the negligence of the carrier or his servants. ’ ’
That case was approved and followed in Douglas Co. v. Minnesota Transfer Co., 62 Minn., 288.
See also Belger v. Dinsmore, 51 N. Y., 166; Durgin v. Express Co., 66 N. H., 277, and the numerous cases cited in those cases and in brief for plaintiff in error.
Applying the principles endorsed by the many authorities, and which we believe are supported by the better reasons, it follows that the trial court erred in refusing to charge the jury as requested in propositions one and four, or giving their equivalent.
The defendant in error, Frazier, who was in charge of the horses, denied that he signed any instrument but the bill of lading, and therefore did not sign the. special live stock contract plead in the answer of the railroad company, and introduced in evidence as its exhibit No. 1. The reply denies its execution by Frazier. Therefore there was a direct issue on that- subject for the jury to try and decide, and it was the duty of the court to properly instruct the jury on that issue, and to say to them that if the contract was fairly entered into by Frazier and the company, no fraud or deception being practiced upon him, it was binding as a limitation on the amount of recovery. But if it was not fairly made and understood, or if Frazier was induced to sign it by fraud, deception or misrepresentation, then it would not be binding. And of course if he did not sign it, or authorize his name to be signed thereto, it would not be binding.
*322 Instead of so instructing the jury the court charged as follows: “I say to you, gentlemen, as a matter of law, no such special contract can be made that would limit the liability of the defendant company as against its own wrongful act or negligence of its servants. So, gentlemen, if you find the facts as I have indicated them to you, you will find for the plaintiffs. ’ ’
We think in this respect the court erred. The instruction was wrong, as the issues were joined and they called for a different statement of the law of the case.
The plaintiff in error makes another complaint of the trial court. The special contract relied on by it, and the one we have been considering, contains the following provision: “That no claim for damages which may accrue to the said shipper under this contract shall be allowed or paid by the said carrier, or sued for in any court by the shipper, unless a claim for such loss or damage shall be made in writing, verified by the affidavit of the said shipper or his agent, and delivered to the agent of the said carrier at his office m Wooster, Ohio, within five days from the time said stock is removed from said car or cars, and that if any loss or damage occurs upon the line of a connecting carrier, then such carrier shall not be liable unless a claim shall be made in like manner and delivered in like time, to some proper officer or agent of the carrier on whose line the loss or injury occurs.”
The railroad company asked the court to charge in two or more forms of expression to the effect, that if the jury should find from the evidence, that the horse of plaintiffs was shipped under special *323 contract known as defendant’s exhibit 1, which con-tains the above provision, and the shippers did not comply with it, they conld not' recover.
It is well to look at the facts attending the unloading of the horse from the car, and about which there seems to be no disagreement. The collision of the cars in which this horse was injured occurred at Lodi late Saturday night, September 8th, or early Sunday morning, and he was so injured that it was necessary to remove him from the car on Sunday, at Lodi, in order to receive the attention of a veterinary-surgeon in whose care he was placed. Frazier went on to Wooster, their destination, with the other two horses. Wooster is about eighteen miles from Lodi. The horse died on Friday the thirteenth after his injury. This was the fifth day after the animal was removed from the car at Lodi. Hubbard, one of the owners, resided at Ashtabula, Ohio, and was there at the time of the injury. The. fate of the injured horse could not be fully determined until his death on the fifth day after having been removed from the car. If attention of the shipper should be given to the above period of limitation, they were entitled, in all reason, to time enough to know the extent of the loss before filing the claim referred to. If under the agreed circumstances, the period for filing the claim was unreasonable, the court should so declare it, just as a court should decide that an ordinance of a municipal corporation is unreasonable, if it be so.
On these facts and under the circumstances not in dispute we think the court very properly refused to instruct the jury as requested. As stated by counsel for defendant in error, the owners were entitled to *324 time sufficient to know whether the claim should he for injury to a live horse, or for the value of a dead one.
But for error in refusing the instruction pointed out and charging to the contrary, the judgments of the lower courts are reversed and the cause remanded.

Judgment reversed.

Davis, C. 'J., Shauck, Crew and ‘Summers, JJ., concur.