J. J. DOUGLAS COMPANY v. MINNESOTA TRANSFER RAILWAY COMPANY.[1]

Oct. 30, 1895.

Nos. 9356—(54).

Carrier—Limiting Liability—Agreed Valuation.

Five barrels of whisky were delivered for transportation to a common carrier, accompanied by a written statement of the shipper that the value of the property was $20 per barrel, and also, as one of the conditions upon which the property should be transported, that: The amount of loss or damage for which any carrier becomes liable shall be computed at the value of the property at the place and time of shipment under the bill of lading, unless a lower value has been agreed upon or is determined by the classification upon which the rate is based, in either of which events such lower value shall be the maximum price to govern such computation. The carrier executed, and the shipper accepted, a bill of lading in accordance with these terms, in which the value of the goods was stated to be $20 per barrel, and classifying them as second-class freight, and fixing the rate of freight at $2.72 per 100 pounds. The bill of lading also contained a stipulation that, "in consideration of rates inserted it is agreed that in case of loss or damage the same shall be adjusted at the agreed valuation of $20 per barrel." If the valuation of the goods had been at their full actual value, they would have been classified as first-class freight, and the rate of freight would have been $3.45 per 100 pounds.

[1] Reported in 64 N. W. 899.

The shipper fixed and agreed to such valuation, in order to obtain, and he did thereby obtain, the lower rate of freight, the charge for transportation being based on such valuation. The goods were lost by the negligence of the carrier. *Held*, in an action for such loss, that the stipulation that such loss should be adjusted at the agreed valuation of $20 per barrel was valid, and that the recovery by the shipper is limited to the value named. Alair v. Northern Pac. R. Co., 53 Minn. 160, followed.

Submission of an agreed case to the district court for Hennepin county. The case was heard by Elliott and Jamison, JJ., who found in favor of plaintiff for $100 and interest and ordered judgment accordingly. From an order, Jamison, J., denying its motion for a new trial, and also from the order for judgment, plaintiff appealed. Affirmed.

*Merrick & Merrick*, for appellant.

*W. H. Norris*, for respondent.

MITCHELL, J. The matter in dispute between these parties was submitted to the district court, without action, upon an agreed state of facts. G. S. 1894, § 6083. The only facts material on this appeal are the following: The Ohio & Mississippi Railway Company is a common carrier operating a line of railway from Louisville, Kentucky, to East St. Louis, Illinois, where it makes connection with another like carrier operating a line of railway from East St. Louis to Chicago, where it makes a like connection with a third like carrier operating a line of railway from Chicago to St. Paul, where it makes a like connection with the transfer tracks of the defendant, the Minnesota Transfer Railway Company, a like carrier, which connects with the railways of both the Northern Pacific Railroad Company and the Great Northern Railway Company, like carriers, each of which operates a line of railway from St. Paul to Butte, Montana; the transfer of freight from railroads running into St. Paul from the south and east to the railroads running from St. Paul to the west and north being made by the defendant, over its system of transfer tracks. In October, 1892, at Louisville, Kentucky, the plaintiff delivered to the first-named railway company (the Ohio & Mississippi) 5 barrels of whisky, weighing 1,980 pounds, now admitted to have been of the actual value of $443.89. The property was so delivered to be trans-

ported by the Ohio & Mississippi Railway Company and its connecting lines from Louisville to Butte, being consigned to one Cohen, at the latter place.

The delivery of the property to the Ohio & Mississippi Railway Company was accompanied by the following paper, prepared, executed, and presented by the plaintiff itself:

"Received of J. J. Douglas & Co. the following described packages (contents unknown), in store at his risk, to be forwarded by the Ohio & Mississippi Railway Company, subject to all the conditions (as printed on the back of this sheet) of a bill of lading, which will be issued by said company, after the same shall have been loaded into the cars of said company.

"Articles.
"Weight (subject to correction).
"Alex Cohen, Butte, Mont.
"Via Great Northern R. R.
"Five bls. whisky O. R. L. 20 Val."

Among the conditions referred to as printed on the back of this paper was the following:

"The amount of any loss or damage for which any carrier becomes liable shall be computed at the value of the property at the place and time of shipment under this bill of lading, unless a lower value has been agreed upon or is determined by the classification upon which the rate is based, in either of which events such lower value shall be the maximum price to govern such computation."

The Ohio & Mississippi Railway then executed and delivered to the plaintiff a bill of lading in accordance with the terms and conditions proposed by the plaintiff, in which the railway company agreed to carry the property to its destination if on its own road; otherwise, to deliver it to another carrier on the route to such destination. It further provided that the rate of freight from Louisville to Butte should be $2.72 per 100 pounds, the goods being classed as second-class freight. It also showed that the goods were consigned via the Great Northern Railway, and stated the value of the goods at $20 per barrel, the same given by the plaintiff in the paper already referred to. The bill of lading contained the following provisions: It is mutually agreed, in consideration of the rate of freight hereinafter named, as to each carrier of all or any of said

property over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the conditions herein contained, and which are hereby agreed to by the shipper, and by him accepted for himself and assigns as just and reasonable.    Also:    In consideration of rates inserted it is agreed that in case of loss or damage the same shall be adjusted at the agreed valuation of twenty dollars per barrel.

The same conditions were printed on the back of this bill of lading as upon the paper previously referred to as prepared, executed, and presented by the plaintiff upon delivery of property.    This "bill of lading was not contrary to the law of Kentucky."    "If said bill of lading had not contained the provision, 'In consideration of rates inserted it is agreed that in case of loss or damage the same shall be adjusted at agreed valuation of $20 a barrel,' and if said whisky had been shipped without any valuation, the same would have been rated as first class, and the freight thereon from Louisville aforesaid to Butte aforesaid would have been $3.45 per hundred pounds."    "Said J. J. Douglas Company then was and long had been a frequent and heavy shipper of such goods over said lines of railway, well knew and intended to avail itself of such valuation and agreement as to valuation, in order to obtain, and so obtained the shipment thereof at such lower rate of freight, at $2.72 per one hundred pounds."

The property, accompanied by a way bill setting forth that the shipment from St. Paul to Butte should be over the Great Northern Railway Company, and that the same was of the value of $20 per barrel, was transported by the Ohio & Mississippi Railway Company and its connecting carriers from Louisville to St. Paul, and there delivered to the defendant, which in due time shipped the same for Butte over the Northern Pacific Railroad Company instead of the Great Northern Railway Company, as directed.    While the goods were still in transit over the Northern Pacific Railroad, the plaintiff, having discovered the insolvency of the consignee, and having a right for that reason to stop the goods in transit, but being ignorant of the misshipment over the Northern Pacific Railroad, directed the Ohio & Mississippi Railway Company to stop delivery thereof, and to hold the same subject to their order.    The Ohio &

Mississippi Railway Company, being also ignorant of the misshipment, immediately communicated these orders to its next succeeding carrier, who, being likewise ignorant of the error in shipment, transmitted the orders to the agent of the Great Northern Railway Company at Butte. If the goods had been shipped, as plaintiff directed, over the Great Northern Railway, the order would have been seasonable to prevent their delivery to the consignee; but the Northern Pacific Railroad Company, being ignorant of any such order, delivered the goods to the consignee, who appropriated the same, and he never paid for them, and, as he was wholly insolvent, the plaintiff has wholly lost the property.

The questions submitted to the court upon this state of facts, so far as here material, were: (1) For such shipment over the Northern Pacific Railroad instead of the Great Northern Railway, is the defendant liable in any sum? (2) If liable, is it liable for the whole actual value of the property, or only to the extent of $20 per barrel? The court below held that the defendant was liable to the extent of $20 per barrel, and no more. As the defendant did not appeal, the first question is not before us for consideration, except so far as it may be involved in the determination of the second.

We have so recently considered this subject at considerable length in Alair v. Northern Pac. R. Co., 53 Minn. 160, 54 N. W. 1072, that it does not require any extended discussion at this time. That case and the present cannot, in our judgment, be distinguished on principle. The value stipulated was one named by the shippers themselves for the very purpose of securing a lower rate of freight; and in consideration of securing that reduced rate, and without any sort of coercion or any unfair advantage being exercised over them by the carrier, they expressly agreed that, in case of loss or damage, the same should be adjusted at the agreed valuation of $20 per barrel; in other words, that such valuation should be that whereon the rate of compensation to the carriers for their services, as well as their risks connected with the property, should be based. That being the case, the contract ought to be upheld as a just and reasonable mode of securing a due proportion between the amount for which the carriers might be responsible and the freight which they were to receive. If this purpose was a reason-

able and fair one, the mere fact that the contract might incidentally have the effect of reducing the amount of the carrier's liability in case of loss caused by negligence will not render it invalid.    If the plaintiff desired to obtain the carrier's unlimited common-law liability, all it had to do was to ship the goods as first class, and pay or agree to pay the higher rate of freight.    It would be manifestly unjust, after a shipper has secured a reduced rate of freight by stipulating to a valuation of the property as the basis of fixing the carrier's compensation and responsibility, to allow him to repudiate his contract.    It would require some very weighty considerations of public policy to justify permitting him to do so.

The only difference that is suggested between the Alair Case and the present one is that in the former it did not appear that the carrier had any reason to suppose that the stipulated value of the property was not its actual value, while in this case it is claimed the carrier must have known that the goods were worth more than $20 per barrel.    The agreed facts do not state that the carrier knew that the value of the goods was greater than that fixed on them by the shipper.    But it is fair to presume that, if the carrier thought of the matter at all, it had good reason to suppose that, if the property was what it purported to be, it was worth more than $20 per barrel.    But we do not think that this, if true, would be at all material, inasmuch as the valuation was one voluntarily fixed and agreed to by the shipper as the basis upon which the carrier's compensation as well as responsibility should be determined and adjusted.    In some respects the facts in this case are even stronger in favor of the defendant than in the Alair Case, although, perhaps, not affecting the rule of law applicable.    In the present case it affirmatively appears that the valuation was one placed on the property by the shipper himself, for the purpose of securing cheaper freight; that he did thereby secure a lower rate, and, in consideration of that fact, expressly contracted that, in case of loss or damage, the same should be adjusted on the basis of that valuation.    There is no suggestion of any coercion or unfair dealing on the part of the carrier which received the freight; neither is there any suggestion of fraud or willful wrong on the part of this defendant in shipping the goods over the Northern Pacific Railroad.    So far as appears, it was simply a mistake.

There is no force in the suggestion that the terms of the contract would be applicable only where the loss or damage occurred while the goods were in transit over the route designated by the shipper, and not to loss or damage caused by a violation of the contract in forwarding them over some other route.

As the authorities were quite fully cited and discussed by us in the Alair Case, it is unnecessary to again refer to them. We will simply suggest that Hart v. Pennsylvania R. Co., 112 U. S. 331, 5 Sup. Ct. 151, was decided over 11 years ago. It has never been overruled or modified, but, on the contrary, has been recently cited approvingly and its doctrine applied in Primrose v. Western U. Tel. Co., 154 U. S. 1, 14 Sup. Ct. 1098. It may therefore be considered as the settled doctrine of the federal courts. The desirableness of being in harmony, if possible, with those courts on a question of this kind, must be apparent. But, aside from any such consideration, we see no reason why the doctrine of the Alair Case should not be adhered to.

We have not considered the effect of the agreed fact that the terms of the bill of lading were not contrary to the law of Kentucky, where the contract was made, as we preferred to decide the case on broader grounds.

Order affirmed.

CANTY, J. I concur in the foregoing opinion, but am of the opinion that the rule of law laid down in this and the Alair Case should be watched closely, as in practice it is liable to lead to evasion and abuse on the part of the common carrier.