# CHARLESTON.

FIELDER & TURLEY v. ADAMS EXPRESS CO.

Submitted June 10, 1910.   Decided April 11, 1911.

1.   APPEAL AND ERROR—*Certificate of Error—Dismissal.*

That a certificate of error appended to a petition for a writ of error antedates the allowance of a bill of exception in the transcript is immaterial and constitutes no ground for dismissal of the writ. (p. 140).

2.   EXCEPTIONS, BILL OF—*Powers of Intermediate Court.*

The judge of the intermediate court of Kanawha county has authority to settle and sign a bill of exception and make it a part of the record within thirty days after the adjournment of the term at which the judgment was rendered. (p. 139).

3.   APPEAL AND ERROR—*Error to Intermediate Court—Review—Entry of Final Judgment.*

On a writ of error from the circuit court of Kanawha county to a judgment of the intermediate court 'of that county, the former court, on reversing the judgment of the latter, should render final judgment in the case, if it is fully made up and susceptible of such disposition. (p. 140).

4.   STATUTES—*Construction.*

In seeking the legislative intent, words in a statute may be referred to their proper connections and each given proper force in its place. (p. 140).

5.   CARRIERS—*Injury to Freight—Limiting Liability.*

The Interstate Commerce Act, passed by Congress and approved, June 29, 1906, does not inhibit an interstate carrier from limiting the amount of its liability for loss, damage or injury to property entrusted to it for shipment by an agreement with the shipper as to the value thereof, entered into in good faith, or procured by misrepresentation on the part of the shipper as to the value thereof. (p. 142).

6.   SAME—*Loss of Freight—Amount of Recovery.*

If, in such case, two or more articles be shipped under an aggregate valuation thereof agreed upon or procured as aforesaid, and part of them be delivered and the balance lost, the shipper can recover only a portion of the agreed value, determinable by the ratio of the aggregate value of the property to the amount stipulated in the agreement as such value. (p. 145).

Error to Circuit Court, Kanawha County.

Action by Fielder & Turley against the Adams Express Company.  Judgment for plaintiff before a justice was affirmed by the intermediate court, but reversed on error by the circuit court, and plaintiffs bring error.   *Reversed and Judgment Entered.*

*Payne & Payne* and *J. F. Bouchelle,* for plaintiff in error.

*Simms, Enslow, Fitzpatrick & Baker,* for defendant in error.

POFFENBARGER, JUDGE:

Fielder & Turley brought this action against the Adams Express Company, in a justice's court, to recover the value of certain goods, shipped to them over said company's line from New York and lost.  In that court, they recovered a judgment for $111.30.  The defendant took an appeal to the intermediate court of Kanawha county.  There a jury was dispensed with and the case submitted to the court on a statement of facts agreed to, and a judgment was rendered for $114.55, with damages according to law.  To this judgment the circuit court of Kanawha county awarded a writ of error, on which it was reversed and the case remanded to the intermediate court for further proceedings and final determination.  Complaining of this, Fielder & Turley procured a writ of error from this Court to the judgment of the circuit court, on which lack of a sufficient bill of exceptions, want of a certificate of error as required by section 8 of chapter 135 of the Code, failure to apply for the writ in proper time or manner, lack of a writ of error from the circuit court or order therefor, the remand of the case to the intermediate court, and reversal by that court, are assigned as grounds of error.

These assignments were made on an incomplete transcript.  A supplemental record shows the issuance of a writ of error and *supersedeas* by the circuit court and acceptance of service thereof, as well as an order awarding the same.  This sufficiently disposes of some of the argument found in the brief.

The bill of exceptions, embodying the agreement as to the facts, was signed and certified in the vacation of the intermediate court, and an order entered in vacation purporting to make the same a part of the record.  Alleged want of authority in the

judge of the intermediate court to allow the bill of exception after the adjournment of the term, under the provisions contained in section 9 of chapter 131 of the Code, is one argument against the validity of the bill of exception. This contention is answered in the negative by express terms of section 4 of chapter 25 of the Acts of 1907, which created said court and defined its powers. It gives the judge of that court the same powers in vacation as are now or may hereafter be conferred upon the judge of the circuit court of Kanawha county, in respect to all cases, matters and proceedings within the jurisdiction of said intermediate court.

On the petition for a writ of error presented to the circuit court, there is a certificate of an attorney stating that, in his opinion, there was error in the judgment of the intermediate court. This certificate was dated May 21, 1909. The bill of exception was signed by the judge on May 29, 1909. As the petition was certified before the bill of exception was signed or made a part of the record, it is contended that the certificate is void and the petition, therefore, insufficient. We see no force in this contention. The date is wholly immaterial. The petition could be prepared and dated in anticipation of what it was known the record would be, when made up.

The circuit court erred in refusing to retain and finally decide the case, and in remanding it to the intermediate court. As it was fully made up and could not be in any respect changed, since the facts had been agreed, there was no reason for remanding it and we think final judgment should have been rendered. Though section 21 of chapter 25 of the Acts of 1907 says "the circuit court may retain the case for trial or remand the same back to the said intermediate court to be further proceeded in and finally determined", these general terms must be so construed as to make them operate reasonably and justly. It must be assumed the legislature did not intend a useless and detrimental proceeding. After an appellate court has ascertained what judgment should have been rendered in a case fully made up, a remand for judgment involves both delay and risk of additional° error as well as double work. Hence it is an idle, useless and injurious proceeding, which the legislature cannot be deemed to have intended, if the clause quoted can perform some other substantial purpose or function. While some effect must

be allowed to all words in a statute, or other writing, if possible, 67 W. Va. 129.   *State* v. *Harden,* 62 W. Va. 313, it is not always necessary nor proper to allow them effect to the full extent of the letter thereof.   *Conley* v. *Coal & Coke Ry. Co.*   It is improper to do so, if such construction leads to an absurd or unjust result.   *Hasson* v. *Chester,* 67 W. Va. 278; *Sohn* v. *B. & L. Ass'n,* 54 W. Va. 101.   Words may be referred to their proper connections, giving each in its place its proper force, in seeking the legislative intent.   *Sohn* v. *B. & L. Ass'n* cited.   Reversals take place in two well known general classes of cases, one in which new jury trials must take place, or additional evidence to be heard, or further orders made to carry the judgment or decree into effect, and one in which none of these things are necessary. In the former class, the cases are remanded, under general appellate law, and, in the latter, finally disposed of in the appellatte court.   The classification and usual mode of disposition were, we must assume, known to the legislature, and it has dealt with both in very general terms.   Power to remand in both involves idle, useless and practically absurd action or procedure.   Hence we may well say, *"reddendo singula singulis",* under the rule declared in *Sohn* v. *B. & L. Ass'n,* the power to remand is applicable to the former class and the power of retention to the latter. Whether the act confers power to retain all cases we do not say, that question not being involved, but we are clearly of the opinion that the circuit court must act finally in complete cases, requiring nothing other than the rendition and entry of judgment.

We come now to the vital questions in the case, the validity and application of a clause in the bill of lading, purporting to limit the liability of the express company to fifty dollars.   This clause says the company shall not be liable in any event for more than fifty dollars, the amount stated therein as the value of the property shipped.   It is one of the regular forms furnished by the company to its patrons in which such valuation is printed, together with the notice that there shall be no greater liability unless a greater value is stated in the bill.   It bears a stamp saying "value asked and not given."   It was the practice of the company to leave a book of these bills with the shippers and send its agent to receive the packages and put this stamp upon the bills, unless a greater value was declared.   At least such was

the fact in this case.  Under the general law, unless changed by the Interstate Commerce Act, a limitation of the liability to the extent of the value declared and agreed upon is valid. *Zouch* v. *Railway Co.,* 36 W. Va. 524; *Hart* v. *Railway Co.,* 112 U. S. 331.  Upon this question, there is some conflict of authority in the various jurisdictions of this country, but we see no occasion to depart from the rule heretofore declared in this state and sustained by the Supreme Court of the United States, nor any necessity for discussion of the decisions enunciating or purporting to declare a different doctrine.

Sections 2 and 20 of the Railroad Rate Act were passed by Congress and approved June 29, 1906.  The first of these sections inhibits the receipt, by an interstate carrier, directly or indirectly, from any person or persons of a greater or less compensation for any service rendered than is charged or received from any other person or persons for doing the same or a like kind of traffic under substantially similar circumstances and conditions.  The other makes such carrier liable for any loss, damage or injury to property received by it for transportation from a point in one state to a point in another, caused by it or any common carrier to which such property may be delivered or over whose line or lines it may pass, and provides that no contract, receipt, rule or regulation shall exempt such common carrier from the liability thereby imposed.  They have been construed and enforced as prohibiting such limitation of liability.  *Ward* v. *Railway Co.,* 58 Mo. 226.  See also Hutchinson's Com. Car. (3 Ed.) section 548.  In reaching this conclusion, the Missouri court merely gave its own interpretation of the statute.  In our opinion, this construction goes beyond the necessary import of the terms used.  They do not deal with the extent of liability or limitation thereof.  Section 2 forbids discrimination.  It does not prescribe a rule, requiring a rate based upon any particular standard, such as weight, volume or value, and inhibit departure therefrom.  All other things being equal, it inhibits discrimination as between persons.  We do not see how it can be said to inhibit a variation in rate or liability on account of difference in value.  That portion of section 22, to which we have referred, deals with the question of liability, not the measure or extent thereof.  At least that is its primary or main purpose.  It does not deal expressly with the limitation of

liability. It says the common carrier shall be liable for the loss, damage or injury to the property, but does not fix any measure or standard of compensation. Of course it destroys the effect of all receipts, contracts, rules and regulations purporting to wholly exempt interstate common carriers. Its exact terms are that the carrier shall be liable for loss, damage or injury and no contract, receipt, rule or regulation shall exempt it. When this act was passed, the right of common carriers to limit their liability in the manner in which this one has done so, had been declared by the federal supreme court and many others. Congress is deemed to have had knowledge of this, and, having such knowledge, it placed no express provision in the act abolishing the right or inhibiting the practice. The purpose of this clause of the statute was to make the initial carrier liable for loss, damage or injury to goods entrusted to it for interstate transportation, whether occasioned by negligence or not, on its own line or elsewhere, notwithstanding any contract, receipt, rule or regulation purporting or attempting to relieve from liability therefor. It does not deal with the extent of liability.

The limitation clause, in one of its aspects, is necessary to the protection of common carriers. In an action for loss, damage or injury, when no agreement has been made respecting the value of property, the carrier is at a great disadvantage in respect to the evidence of value. The shipper occupies a superior ground. Carriers have just and reasonable ground for requiring a specification of value, setting a limit beyond which no damages can be claimed, as a measure of protection against exorbitant and unjust demands. On the other hand, a shipper seeking or obtaining a valuation, below the actual value of the property for the purpose of obtaining a low rate, is guilty of an act of misrepresentation. Hence there is no hardship nor injustice in holding him bound by his representation or agreement as to the value. This contract of limitation, therefore, rests upon good solid reason and just considerations. The abolition thereof would have introduced a very great change in the methods of transportation, for purposes extending far beyond any indicated by the express terms of the act. It does not fall clearly within the inhibition of discrimination. At any rate, the express prohibition thereof is not adopted as a means of preventing discrimination, nor does it fall clearly within the purpose, respecting

exemption from liability. Therefore, we think the act does not abrogate the rule permitting limitation of liability. While the Interstate Commerce Commission disclaims power to determine this question, it being a judicial one, it expresses the opinion that the act has not altered the rule. 13 I. C. C. Rep. 550.

This right to limit liability by agreement as to value is subject, however, in the opinion of many courts, to a very important qualification. The shipper is bound by his agreement on the principle of estoppel. One who avails himself of an estoppel must have been misled by the opposite party. Hence, if the carrier agreed upon a valuation, known to be merely arbitrary and far below the actual value of the property, it cannot claim the status of a person misled to his injury. Accordingly, it has been held in many cases that a collusive or corrupt contract between the shipper and carrier, fixing the amount below the actual value of the property, is void and does not limit the liability of the latter. On the other hand, if the agreement has been made in good faith in accordance with what the parties deemed to be the actual value of the property, it is binding, or, if the shipper, without knowldge of the carrier, has declared a false low valuation, he is bound by it on the principle of estoppel. See the opinion of Commissioner Lane, 13 I. C. C. Rep. 550, attempting to reconcile the apparently conflicting decisions, upon these principles.

The record in this case presents no evidence of a false value, collusively agreed upon. The body of the express receipt was filled out by an employe of the shipper and the two packages placed where the carrier's agent was expected to find them. He did find them there, together with the receipt book in which the receipt therefor had been filled out and the value specified therein left unaltered. He placed his stamp upon the receipt, showing the date, the number of packages and that the value had been asked and not given. Having done this, he took the packages, and, in a few minutes afterwards, the manager of the stock and shipping departments found the receipt there, saw that the goods had gone and filed the receipt away. This amounted to a representation on the part of the shipper that the property was not of greater value than fifty dollars, and precludes the idea of collusion or a corrupt agreement as to the

value of the property. We think, therefore, the contract was valid and binding.

One of the packages, having an actual value of $120.00, was delivered to the consignee, while the other, having an actual value of $105.50, was lost. Under these circumstances, it remains to say whether the consignee may recover the entire fifty dollars or only a portion thereof, determinable by the ratio of the entire value of the goods to the whole amount of indemnity. By the great weight of authority the indemnity is to be apportioned. *Joyce* v. *U. S. Express Co.,* 72 N. E. 865; *Railway Co.* v. *Lesser,* 46 Ark. 236; *Goodman* v. *Railway Co.,* 71 Mo. App. 460; *London Assurance Co.,* 167 U. S. 149. Hastily examined, the following decisions might be considered as inconsistent with this conclusion: *Brown* v. *Steamship Co.,* 147 Mass. 58; *Starnes* v. *Louisville Co.,* 91 Tenn. 516; *Nelson* v. *Railway Co.,* 72 Pac. 642; but they are not. In all these cases, the valuations stipulated were by the package for merchandise, or head for live stock, which makes a very material difference, the agreement being separable and each piece of property or head of stock protected by a legally separate contract. Under this principle, the plaintiffs were entitled to recover, at the date of the judgment of the intermediate court, $23.44 and $1.40 interest, making a total of $24.84, for which amount judgment will be rendered as of the date of the judgment rendered by the intermediate court and with interest from that date.

It remains only to dispose of the question of costs. As the appellant in the intermediate court had not tendered the amount due, it was not entitled to costs in that court. *Gas Co.* v. *Holt,* 66 W. Va. 516. Having successfully resisted the efforts of the plaintiff in error in this Court to reinstate the judgment reversed by the circuit court, the defendant in error substantially prevails here and is entitled to costs in this Court, if the amount in controversy brought the case within its jurisdiction. This amount was the judgment of the intermediate court, $114.55. Therefore, costs in this Court will be adjudged to the defendant in error here.

*Reversed, and Judgment Rendered.*