## LOUISA G. PORTEOUS v. ADAMS EXPRESS COMPANY.[1]

July 28, 1911.

Nos. 17,145—(225).

**Carrier — contract in New York — concealment of value.**

According to the law of the state of New York, where a carrier, by his contract, limits his liability to a specified amount, in case the value of goods delivered for carriage is not stated by the shipper, if goods of greater value are so delivered, silence on the part of the shipper as to the real value, although there is no inquiry by the carrier, and no artifice to conceal the value, or to deceive, is a legal fraud, which discharges the carrier from liability for ordinary negligence for an amount exceeding the limitation of the contract.

**Same — receipt for shipment — avoidance of terms.**

When a person delivers a package for transportation to an express company and accepts a receipt therefor, the receipt is presumed to contain the

[1]Reported in 132 N. W. 296.

---

[Note] Limiting valuation of property as affecting amount of recovery for loss by negligence, see note in 1 L.R.A.(N.S.) 985.

Effect of misrepresentation as to character, quantity, or value of goods by shipper on his right to recover for loss, see note in 23 L.R.A.(N.S.) 745.

terms of the contract governing the shipment, and, if he desires to avoid·
the terms of the contract, the burden is upon the person who accepts such
a receipt to show that he was in some manner misled by misrepresenta-
tion, fraud, or concealment, and mere failure to read or examine the receipt
is not sufficient.

After the decision upon the former appeal, reported in 112 Minn.
31, 127 N. W. 429, the case was tried before Holt, J., who directed
a verdict in favor of plaintiff for $50. From an order denying
plaintiff's motion for a new trial, he appealed. Affirmed.

*Charles J. Traxler,* for appellant.

*Lightner & Young,* for respondents.

LEWIS, J.

The complaint simply states that plaintiff delivered to defendant
for shipment jewelry to the value of $1,435, which defendant re-
ceived and agreed to deliver as common carrier, but failed to do so.

The answer states that the husband of the plaintiff delivered the
package to the defendant in the city of New York, and that the con-
tents were concealed and not stated; that he was asked to state the
value of the package, but declined to do so, and that a contract was
entered into, in the form of an express receipt, which was duly de-
livered to him at that time; that the contract provided that, "in
consideration of the rate charged for carrying said property, which
is regulated by the value thereof and is based upon a valuation of not
exceeding fifty dollars unless a greater value is declared, the shipper
agrees that the value of said property is not more than fifty dollars,
unless a greater value is stated herein, and that the company shall
not be liable in any event for more than the value so stated, nor
for more than fifty dollars if no value is stated herein." The answer
also alleged that this contract was binding and legal under the laws
of the state of New York.

The reply denied all fraudulent representations as to the character
or value of the article contained in the package; denied that the con-
tents were concealed, and alleged that· the defendant was informed
that the package contained jewelry, and that it was openly displayed
before the defendant, so that the defendant had an opportunity to

examine it; denied that the value of the property was asked by the agent, and denied that the plaintiff refused to give or state the value; denied that there was any contract in writing; denied that a copy of the receipt set out in the answer was received by the plaintiff for the shipment of said package, and denied that it constituted the contract between the parties; alleged that, if it should be found that the paper referred to constituted a contract between the parties, it was null and void:

First. Because the defendant falsely and fraudulently stamped upon it the words, "Value asked and not given," without the knowledge or consent of the plaintiff.

Second. The defendant falsely stamped and inserted into the receipt the words, "Accepted only at owner's risk of damage," without the knowledge or consent of the plaintiff.

Third. That it was void for the reason that the defendant stamped or inserted into the receipt the words, "Liability limited to fifty dollars unless a greater value is declared," without the knowledge or consent of the plaintiff.

Fourth. That it was void because the defendant fraudulently induced plaintiff to accept and retain the receipt, by representing and pretending that it was merely a receipt for money. That the contract was void for the reason that the limitation of liability was arbitrarily limited and fixed by the defendant, for the sole purpose of limiting its liability, and not for the purpose of determining the transportation charges and the responsibility of the defendant. Further, that the limitation was unreasonable and inadequate, and did not purport to be based upon any agreed valuation of the property, which appears from the face of the receipt itself.

At the close of the case the trial court instructed the jury to return a verdict for the plaintiff for the sum of $50, with interest from the date of shipment.

There was a sharp conflict as to what took place between Mr. Porteous and the express agent at the time the package and the receipt were delivered. Mr. Porteous testified: That on a Sunday morning in the city of New York he entered the offices of the defendant and placed a pasteboard box upon the counter, asking the

agent if he could ship it to Concordville, Pennsylvania. The agent replied that he could, and Mr. Porteous asked for a piece of paper and twine to tie it up with. That before wrapping it up Mr. Porteous took the cover off the box to rewrap the articles. That the agent was standing inside the counter directly opposite to him, and that he could have seen the contents of the box if he had looked; but the witness did not testify that the agent actually saw the contents of the box. Mr. Porteous wrapped up the articles, tied up the box, and addressed it, and the agent then asked him if he wanted a receipt for it, making the remark that a receipt was not valid on Sunday, to which Mr. Porteous replied that he did not suppose that would make any difference to the Adams Express Company. The agent then took up the package of receipt forms that lay on the counter and wrote the address from the address on the package, and asked the name of the sender and if he wished to prepay the carriage charges, which were thirty cents. The witness said he did, and that he paid them. That the agent did not ask him what the value of the package was, and he did not state its value. That when the receipt was given him he put it in his pocket without reading it, and did not read it until after he was notified that the package had not been received. The witness testified that he did not see any scales, and that he did not see the agent weigh the package. Mr. Porteous further stated that he hurried out, that he had an engagement to meet some one and was in a hurry, and that he left without making any inquiry, and that it did not occur to him to examine the receipt with a view to ascertaining any statement therein with reference to the value of the package.

1. The general rule is that when a contract of carriage is fairly made, agreeing upon a valuation of the property carried, with the rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, the contract will be held as a lawful mode of receiving a due and proper proportion between the amount for which the carrier may be responsible and the freight he receives, even in case of loss or damage by the negligence of the carrier. Hart v. Pennsylvania R. Co. 112 U. S. 331,

5 Sup. Ct. 151, 28 L. ed. 717. The court said in the course of the opinion:

"In the absence of fraud or imposition, a common carrier is answerable for the loss of a package of goods, though he is ignorant of its contents, and though its contents are ever so valuable, if he does not make a special acceptance. This is reasonable, because he can always guard himself by special acceptance, or by insisting upon being informed of the nature and value of the articles before receiving them. If the shipper is guilty of fraud or imposition, by misrepresenting the nature or value of the articles, he destroys his claim to indemnity because he has attempted to deprive the carrier of the right to be compensated in proportion to the value of the articles and consequent risk. * * * "

The decisions of this court with reference to the question are referred to in the opinion on the previous appeal. 112 Minn. 31, 127 N. W. 429.

This case is controlled by the law of New York, and we have examined the decisions of that state with a view of determining whether defendant was bound to ascertain the value of the package when given an opportunity, or was it justified in assuming a value when not informed? It is the settled law of New York that when a carrier by his contract limits his liability to a specified amount, in case the value of the goods delivered for carriage is not stated by the shipper, if goods of greater value are so delivered, silence on the part of the shipper as to the real value, although there is no inquiry by the carrier, and no artifice to conceal the value, or deceive, is a legal fraud, which discharges the carrier from liability for ordinary negligence if the amount exceeds the limitation of the contract.

This is the rule laid down in Magnin v. Dinsmore, 70 N. Y. 410, 26 Am. Rep. 608. The shipper had accepted the receipt containing the contract which limited the liability to $50 for the shipment of goods valued at $1,491. Upon a former appeal of that case, reported in 62 N. Y. at page 35, 20 Am. Rep. 442, it was said that when the shipper agrees that the carrier, for a limited liability, should thereby express to the latter his estimate of the risk to be run and of the care needed, and holds out the package to him as an ordinary article,

which he would have no objection to take as of course, by accepting carriage upon the terms of the limited liability, the shipper indicates his judgment of the character of the risk and of the needed care, and the shipper's silence as to the real value is the same as an answer as to the mean value, thus keeping from the carrier his adequate reward, and that the concealment of an important fact in entering into the bargain amounts to a fraud in law upon the carrier.

On the second appeal, as reported in 70 N. Y. 410, 26 Am. Rep. 608, the court reiterated and sustained the rule, and further held that the disclosure of value by the shipper is a condition precedent of liability on the part of the carrier, when unaccompanied by any misfeasance or any wilful act, and that the omission on the part of the carrier to make inquiry as to the value was not a waiver of the limitation in the contract.

This case is referred to and approved in a later decision in Tewes v. North German Lloyd, 186 N. Y. 151, 78 N. E. 864, 8 L.R.A. (N.S.) 199. See also Bates v. Weir, 121 App. Div. 275, 105 N. Y. Supp. 785.

2. We now come to the second phase of the case, viz.: Was plaintiff released from the terms of the contract by reason of the manner of its execution and delivery to him. Respondent submits that the rule in New York is that it is a matter of common knowledge that, when a person delivers a package for transportation to an express company and accepts a receipt, the receipt is presumed to contain the terms of the contract governing the shipment, and that the burden is on the person who accepts such a receipt to show that he was in some manner misled by the conduct of the company, and was led to suppose that it did not contain such a contract, and that mere failure to read or to examine the contract is not a sufficient excuse. Mr. Porteous was an experienced business man, residing in the city of Minneapolis and engaged in the lumber business, and admitted on cross-examination that he was familiar with bills of lading and receipts, and testified as follows:

"Q. When you took this, you knew it was a receipt or bill of lading, and contained conditions in regard to the shipment? A. I didn't know it was a bill of lading. I know it was a receipt. I was

asked if I wanted a receipt, and I said, 'Yes,' and he gave this to me. Q. You knew it was a receipt containing conditions? A. There were conditions, very surely; yes. Q. You knew that. You couldn't very well look at it without knowing it, could you? A. I didn't even look at it at that particular moment. Q. You saw it was in the form of an ordinary express receipt? A. Yes, surely. Q. At this time when you sent this package, and before that time, you knew that the value of the property that was shipped entered into the question of the rate charged for shipment, did you not? A. If I had stopped to think of the matter, I might possibly have known that. Q. Then I understand you didn't stop and think? A. No, sir. Q. If you had stopped and thought, you did know that fact? A. Why, I asked him, and I paid what I was told. Q. Exactly, but you knew, from your business experience at the time you sent this package, that the value of merchandise sent by a common carrier enters largely into the rate that is charged for transportation? A. Yes; I do know that. Q. And you knew it then, didn't you, from your business experience? A. Undoubtedly I would have known it."

In the case of Jonasson v. Weir, 130 App. Div. 528, 115 N. Y. Supp. 6, the plaintiff delivered to the driver of the Adams Express Company in the city of New York eleven packages, properly packed and addressed, of the aggregate value of $1,479.63, and the contract of shipment was contained in the express receipts, which were introduced in evidence by the plaintiff, and were contained in a book kept by the plaintiff, whose clerk filled them out and presented them to the company's driver for signature, retaining them after they were signed. The contract contained a similar stipulation limiting liability, and it was held that the shipper was bound by the contract.

Greenwald v. Weir, 130 App. Div. 696, 115 N. Y. Supp. 311, is a similar case. The latter case was reviewed by the New York Court of Appeals, and is found in Greenwald v. Barrett, 199 N. Y. at page 170, 92 N. E. 218. The court [at page 177] says:

"In order to regulate [defendant's] charges to its customers, with reference to the value of the property transported, the common carrier may demand of the shipper a declaration of such value, or may agree with him that in default of a statement the value shall

be deemed a given amount. This agreement may be direct and express, or it may arise indirectly out of the acceptance by the shipper of a receipt from the carrier, in which it is stated that the value is to be considered a sum specified, if no other has been given by the shipper. Such was the character of the receipt given by the representative of the express company to the plaintiffs in the present case. They had employed the same form of receipt in shipping goods by the Adams Express Company for a period of six years, and must be charged with a knowledge of its contents, in the absence of any proof whatever that they were not acquainted therewith. There was a book of blank receipts in their custody, and they made entries in the blanks themselves, completely prepared the receipts for signatures by the express company's driver when he called for and took the goods. The contract of agreed valuation being one which the parties could lawfully make, the proof here required a finding that it had been made, and this fixed the measure of the plaintiff's damages at $50, and no more."

In the last two cases cited it will be noticed that there was no question about the knowledge of the shipper as to the contents of the receipts, and the court lays considerable stress on the fact that they had every opportunity to become familiar with the fact that the receipt contained the contract, because they had the blanks in their possession and filled them out, with the exception of the signature. A similar case in that respect is Greenwald v. Barrett, supra.

The New York court of appeals had occasion to refer to this phase of the question in the case of Kirkland v. Dinsmore, 62 N. Y. 171, 20 Am. Rep. 475. There the shipper accepted a receipt which contained the condition that the company was not to be held liable for any loss occasioned by the dangers of railroad transportation, or ocean or river navigation, or by fire or steam. The package was shipped upon a steamer, and was lost by fire. The trial court found that the plaintiff did not read the receipt at the time it was delivered to him, and that his attention was not called to its conditions by the defendant's agent, and that he did not become acquainted with its contents until the following fall or winter; that he thought it was an ordinary receipt for money, and not a contract. With reference to

this finding, the appellate court said: "That under all the circumstances the shipper must have known that the receipt contained a condition which bound the company to carry the money and deliver it pursuant to some agreement, that there was no evidence to indicate any fraud or imposition on the part of the agent to the contrary," that the contract was one that the parties might lawfully have made, and that the company had the right to infer, from the shipper's acceptance of the receipt, without dissent, that he assented to its terms. Attention was called to the general rule that the shippers of goods who receive bills of lading and other commercial instruments are presumed to know, from their uniform character and the nature of the business, that they contain the terms upon which the property is to be carried.

Upon the former appeal we were not inclined to accept this doctrine as settled in the courts of New York, but a review of the cases then cited, with others, have convinced us to the contrary. The last expression on this subject is by the Appellate Division of the Supreme Court in the case of Knapp v. Wells, Fargo & Co. 134 App. Div. 712, 119 N. Y. Supp. 117. The plaintiff was temporarily stopping at a hotel in the city of New York, and went to an office of the express company in that city, and left an order for the defendant to procure a dress suit case at the hotel on the following day and to express it to a point in another state. She told the clerk of the express company that the suit case would be in her room at the hotel, and that the room would be open, and gave the number of her room. She subsequently told the hotel clerk that the defendant would call for the suit case, and asked him to take the receipt for her, which he did. On her return to the hotel she was given the receipt, and retained it, but did not read it. It was in the usual form, limiting the liability to $50 unless a greater value was stated therein, and it appeared from the evidence that no value was asked of her, or of the hotel clerk, and no value was given. The court held that defendant was precluded by the terms of the contract and that there was no question of fact for the jury, stating the proposition as follows: "It .is now well settled that a receipt of the general nature of the one in question constitutes the contract between the parties, and that a ship-

115 M.—19.

per of goods, receiving it without objection, is bound by its provisions, in the absence of artifice or concealment, and cannot overcome its legal effect by failing to read it or to acquaint himself with its provisions"—referring to Hoffman v. Metropolitan Express Co., 111 App. Div. 407, 97 N. Y. Supp. 838. In the case referred to the court stated that the shipper, who receives a receipt without objection, in the absence of misrepresentation, fraud, or concealment, is bound by its terms, and cannot set up failure to read it in order to destroy its legal effect.

We are unable to discover in the record any evidence that Mr. Porteous was induced to accept the receipt under any misrepresentation, fraud, or concealment as to its contents. The rule may be otherwise in other jurisdictions; but it is evident that in New York the burden is upon the person who receives a receipt for an express package to prove that he was misled by some fraud, concealment, or misrepresentation of the carrier, and the mere fact that he did not read the receipt constitutes no evidence whatever to excuse him from a knowledge of its contents. Mr. Porteous admits that if he had stopped to think he would have remembered that express receipts contain the substance of a contract governing the terms upon which a package is received for transportation, and the only reasonable excuse for not reading it was that he was in a hurry to keep an appointment in another place.

There are other questions connected with the subject discussed in the briefs, but it is unnecessary to consider them.

Affirmed.