# E. L. CARPENTER v. UNITED STATES EXPRESS COMPANY.[1]

December 20, 1912.

Nos. 17,732—(81).

**Carrier — contract in New York — case followed.**

Plaintiff, by an agent, gave to defendant, an express company, valuable furs in wrapped packages for shipment from New York to Minneapolis, and accepted a shipment receipt therefor wherein it was stipulated that in case of loss the value did not exceed $50. Adhering to the rule in Porteous v. Adams Express Co. 115 ·Minn. 281, the shipping receipt became, under the decisions of New York, a valid contract in all its terms.

**Findings sustained by evidence.**

Held, also, that the finding that the shipping receipt is a contract entered into fairly, and is just and reasonable, is supported by the evidence.

**Foreign contract enforceable.**

A contract, valid in the state where made, will be enforced by the courts of this state, when not contravening the public policy of the state, or its laws.

**What law governs.**

Upon the facts herein plaintiff is not in a position to raise the question whether a contract of interstate carriage should be construed in accordance with the laws of the state where the breach occurred, rather than in accordance with the laws of the state where made.

[1] Reported in 139 N. W. 154.

Note.—For conflict of laws as to carriers' contracts, see note in 63 L.R.A. 513.
As to validity of stipulation limiting carrier's liability to agreed valuation as affected by the Hepburn act, see note in 28 L.R.A.(N.S.) 293.

**Findings sustained by evidence.**

The finding to the effect that defendant had legal rates graduated in accordance with the value of the shipment, so that it was lower when the value of the shipment was limited to $50 or less, and correspondingly higher when valued in excess of said sum, is sustained by the evidence, so that no special consideration need be shown for the limited liability, other than the lower rates in force for shipments made thereunder.

**Limiting liability — Federal statute.**

The Carmack amendment of the Hepburn act does not prevent a common carrier from making valid shipping contracts limiting liability according to an agreed value upon interstate shipments under legal tariff rates.

Action in the district court for Hennepin county to recover $400, value of property lost while in possession of defendant carrier. The answer alleged that the shipment was under a certain contract embodied in the receipt given to and accepted by the shipper; that one of the conditions of such contract was that "the liability of this company is limited to $50, unless a greater value is stated in this receipt, and ceases on delivery of property at the nearest point of destination it can carry same." The reply admitted that defendant gave the representative of the hotel a paper, referred to in the answer as a receipt or contract, but denied that said pretended receipt or contract was ever accepted by plaintiff, or by any one for him, or in his behalf, as such, or that such pretended receipt or contract was ever delivered or accepted or intended, by any one representing plaintiff, for the purpose of creating a contract, but was delivered solely as a receipt for money paid for the express charges. It further alleged that plaintiff was never requested by defendant to state the value of the articles specified in the complaint, nor was any such request ever made of any person representing plaintiff, and that defendant was advised of the character of the goods so accepted for shipment. It further alleged that the rate charged was an arbitrary rate, and was not a rate intended to be based on any special agreement relative to the value of the articles.

The case was tried before Booth, J., who made findings of fact and as conclusion of law ordered judgment in favor of plaintiff for $50 and interest thereon. Plaintiff's motion for a new trial was denied.

From the judgment entered pursuant to the findings, plaintiff appealed. Affirmed.

*Powell & Simpson* and *Ernest C. Carman,* for appellant.

*Frank B. Kellogg, C. A. Severance* and *Robert E. Olds,* for respondent.

HOLT, J.

The judgment appealed from was entered upon findings of fact after trial to the court, and involves the right of plaintiff to recover from the defendant, an express company, for goods lost in transit, any more than the limited amount stated in the shipping receipt issued by defendant when the goods were delivered to it.

Plaintiff resides in Minneapolis, Minnesota, and on February 20, 1907, while stopping at a hotel in New York City, gave valuable furs done up in paper boxes to a valet in the hotel, with instructions to send by express to Minneapolis. The valet took the boxes to a porter in the hotel who attends to such matters, and the porter prepared the boxes for shipment by placing heavier wrappers around them. It was customary for an agent of defendant to call at the hotel for articles which guests might desire to send over its routes. The porter turned over these boxes, and $2 to pay expressage thereon, to defendant's agent, who, in return, issued a shipping receipt, which purported to limit the recovery in case of loss to $50. The trial court found that this shipping receipt became the contract between the parties in regard to the shipment, that it was fairly entered into, that it was valid under the laws of the state of New York, where made, and contravened neither the public policy nor law of this state nor any act of Congress, that the rate charged was fair for the limited liability assumed, and that the limitation of liability in the receipt was just and reasonable in the eye of the law. Plaintiff appeals, because the recovery was limited to the $50. He insists that he is entitled to $400, the full value of the furs lost.

One contention is that, since the evidence in the case consists of admissions, documents, and depositions, this court is in as good position to determine the ultimate facts as was the trial court, and therefore the rule that the findings of the trial court on issues of fact will

stand, unless manifestly without support in the evidence, does not here apply. This is not so. The duty to determine the issues of fact is by law laid upon the trial court, where there is no jury; and the appellate court may not interfere therewith, save to ascertain whether the record presents evidence which fairly sustains the findings. Treat v. Kellogg, 104 Minn. 54, 115 N. W. 947; Wunder v. Turner, supra, page 13, 138 N. W. 770, and cases therein cited.

Under the findings of the court, the contract of shipment, if made in this state, would have been valid as to the limitation of value, under the doctrine announced in Alair v. Northern Pac. Ry. Co. 53 Minn. 160, 54 N. W. 1072, 19 L.R.A. 764, 39 Am. St. 588, and ever since recognized. And we think the findings cannot be successfully attacked on appeal. But, even if it were conceded that the findings are wrong, the undisputed facts herein bring this case squarely within that of Porteous v. Adams Express Co. 115 Minn. 281, 132 N. W. 296, so that the law, as it exists in New York, where the shipment was made, governs, and thereunder a shipper, who receives a receipt similar to the one here in question, without objection, is, in the absence of fraud, concluded by its terms.

A contract valid in the state where made will be enforced by the courts here, if it does not conflict with the public policy or laws of our state.

Plaintiff earnestly insists that, on grounds not presented or considered in the Porteous case, the limitation is invalid, or not binding:

First, because, this being an interstate shipment, the law of the state where the loss occurs determines the validity of the limitation in the shipping receipt, and not that of the place where the contract is made. The weight of authority is against the proposition. 9 Cyc. 682, states: "A contract of carriage of goods from one country to another is governed by the laws of the country where it is made"— citing numerous cases. And although not expressly presented in the Porteous case, supra, it was held that the law of New York, where the shipment was made, determined the validity of the contract. But, even if we were to follow the doctrine that the terms of the contract "should be construed in accordance with the law of the state where its negligent breach causing injury occurs," as held in Hughes v. Penn-

sylvania, 202 Pa. St. 222, 51 Atl. 990, 63 L.R.A. 513, 97 Am. St. 713, and also by the New Hampshire and Ohio courts in Barter v. Wheeler, 49 N. H. 9, 6 Am. Rep. 434; Pittsburgh v. Sheppard, 56 Oh. St. 68, 46 N. E. 61, 60 Am. St. 732, it does not avail plaintiff; for the evidence fails to show where the loss occurred. The limitation of value was valid where the contract was made, and, under the findings, valid here, where the goods were to be delivered.

Second. It is said there was no special consideration for this limited liability. The rule in Missouri and some other states is that there must be a special consideration to support a contract limiting liability. George v. Chicago, 214 Mo. 551, 113 S. W. 1099, 127 Am. St. 690. But in none of the adjudicated cases in this court upon this subject has it been suggested that a consideration apart from the usual rates for the estimated value of the shipment is necessary to obtain a binding limitation of value. In addition to the Alair and Porteous cases, supra, may be cited J. J. Douglas Co. v. Minnesota Transfer Ry. Co. 62 Minn. 288, 64 N. W. 899, 30 L.R.A. 860; O'Malley v. Great Northern Ry. Co. 86 Minn. 380, 90 N. W. 974; Harrington v. Wabash R. Co. 108 Minn. 257, 122 N. W. 14, 23 L.R.A.(N.S.) 745. We have, however, high authority for the proposition that no consideration, apart from the one stated in the bill of lading, is necessary to support this feature of the contract. Cau v. Texas & Pac. Ry. Co. 194 U. S. 427, 24 Sup. Ct. 663, 48 L. ed. 1053.

In this connection it is urged that, when the shipment in question was made, the only legal tariff rate in force was one for unlimited liability. To this we cannot assent, for the trial court found that the defendant had lawfully in force, not only the rate which was actually charged plaintiff, applicable to packages at not more than $50, with a limitation liability to a similar sum in case of loss, but also had lawfully in force a higher transportation rate, applicable to shipments exceeding $50 in value. In other words, defendant had in force and effect legal rates graduated according to the value of the shipment. We cannot say that this finding is not sustained. The tariff schedules were received without objection, and although it may be difficult for the ordinary person to find the established rates from

these, one somewhat familiar with transportation business may do it readily.

Third.   The chief contention is, that the limitation attempted is annulled by the Carmack amendment of the Hepburn act (Act June 29, 1906, 34 St. 595), which reads as follows:

"That any common carrier, railroad or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered, or over whose line or lines such property may pass, and no contract, receipt, rule or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed:   Provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law."

There are two lines of decisions as to the effect of the quoted statute.   The courts of Arkansas, Georgia, and Texas hold that since the Carmack amendment every limitation of the common-law liability of a common carrier with respect to interstate shipments is void.   Kansas City v. Carl, 91 Ark. 97, 121 S. W. 932, 134 Am. St. 56; St. Louis v. Dunn, 94 Ark. 407, 127 S. W. 464; Louisville v. Warfield, 6 Ga. App. 550, 65 S. E. 308; Southern Pacific v. Meadors (Tex. Civ. App.) 129 S. W. 170.   In Missouri, two of the courts of appeal have taken the same view.   Blackmer v. Mobile, 137 Mo. App. 479, 119 S. W. 1, and Holland v. Chicago, 139 Mo. App. 702, 123 S. W. 987.   While the Springfield court of appeals in McElvain v. St. Louis, 151 Mo. App. 126, 131 S. W. 736, interprets the act as designed to accomplish no other purpose than to take away the right a common carrier had under the common law in most jurisdictions in this country of stipulating that its responsibility as a carrier ceased upon delivery of the shipment in good order and without unreasonable delay to a connecting carrier.   Such is also the construction placed on the act in Greenwald v. Barrett, 199 N. Y. 170, 92 N. E. 218, 35 L.R.A.(N.S.) 971; Bernard v. Adams, 205 Mass. 254, 91

N. E. 325, 28 L.R.A.(N.S.) 293, 18 An. Cas. 351; Travis v. Wells-Fargo, 79 N. J. L. 83, 74 Atl. 444; Fielder v. Adams Express Co. 69 W. Va. 138, 71 S. E. 99 (April 11, 1911), and Larsen v. Oregon, 38 Utah, 130, 110 Pac. 983.

It seems to us that the evident purpose and aim of the Carmack amendment was to fix the entire responsibility upon the carrier who first accepts an interstate shipment, which must necessarily pass over the lines of different carriers in the course of its destination, so that the shipper, in case of damage or loss, will not be compelled to be to the inconvenience and expense of passing over the route to pick out and seek redress from the carrier who occasioned the injury. In other words, it imposed on the initial carrier the burden of being the principal, making the connecting carriers its agents, for whose conduct it is held responsible, and that such is the whole extent of the burden or duty imposed by the act. This burden the initial carrier may not escape by any contract stipulation. Since the shipment involved here was interstate, the contract and the rights of the parties thereunder are controlled by the Federal law, and not by the law of New York, if there be a conflict. And although the New York courts have construed the Federal act in question as not inhibiting provisions in a bill of lading or shipping receipt limiting liability, we are not bound to adopt such construction, if we conclude that the one adopted by the courts of the southern states above mentioned is right. Southern v. Harrison, 119 Ala. 539, 24 South. 552, 43 L.R.A. 385, 72 Am. St. 936. However, we are of opinion that considering the aim and purpose of the Carmack amendment, the decisions in New York, Massachusetts, New Jersey, West Virginia, and Utah take the proper view of the scope and effect of the law, and this we may do in the absence of any utterance of the Supreme Court of the United States upon the subject.

The Federal court of appeals for the Eighth circuit in the case of Latta v. Chicago, St. Paul, M. & O. Ry. Co. 172 Fed. 850, 97 C. C. A. 198, holds that by the proviso contained in the act Congress left to each state wherein the contract was made, or perhaps to the courts, to determine the propriety of permitting, prohibiting, or sustaining limitations of liability in interstate shipping contracts. It

120 M.—5.

may also be said that inferentially the Federal Supreme Court has indicated that the interpretation placed on the act by the New York court is correct, for in Atlantic Coast L. R. Co. v. Riverside Mills, 219 U. S. 186, 31 Sup. Ct. 164, 55 L. ed. 167, 31 L.R.A.(N.S.) 7, the court, speaking of this amendment, says: "It must be conceded that the effect of the act in respect of carriers receiving packages in one state for a point in another and beyond its own lines, is to deny to such an initial carrier the former right to make a contract limiting liability to its own line." We read the opinion of Commissioner Lane in the Matter of Released Rates, 13 I. C. C. R. 550, as pointing to a different construction of the Carmack amendment from that contended for by plaintiff.

We therefore conclude that, this being a New York contract, which, under the decisions of that state, is binding in all its terms on plaintiff, and is not in conflict with the public policy or law of this state, nor with the Federal statute above quoted, no other result could be reached on the undisputed facts than was done in this case.

Order affirmed.