### 1928.   LOUISVILLE & NASHVILLE RAILROAD COMPANY
### *v.* WARFIELD & LEE.

1. A State court has jurisdiction to enforce the liability imposed upon the initial carrier in an interstate shipment of goods by the Hepburn amendment to the 20th section of the interstate-commerce act. The decision in the case of *Southern Pacific Co.* v. *Crenshaw,* 5 *Ga. App.* 675 (63 S. E. 865), adhered to on review.
2. A provision in a contract for the carriage of live-stock that the shipper shall give written notice of any loss or damage before the animals are removed from destination and before they are mingled with other animals is not applicable to a suit for the value of an animal which died in transit and was therefore never delivered.
3. Arbitrary limitations of value and preadjustments of the damage in contracts of carriage are invalid under the general law, and are likewise invalid under the 20th section of the interstate-commerce act as amended by the Hepburn act of 1906.
4. Under the Federal statute referred to in the preceding headnotes, the initial carrier is responsible for "any loss, damage or injury . . caused by it" or by the connecting carriers. This creates a liability for all losses or damages for which the carrier would be responsible at common law in the absence of a special contract.
   (*a*) When used of a person or other subject charged with an affirmative duty of care or of good conduct, so to speak, the word "caused" implies not only active misconduct and deeds of commission, but also passive neglect, deeds of omission, and failure to exercise duties faithfully.

Action for damages, from city court of Macon—Judge Hodges. May 12, 1909.

Argued July 16,—Decided July 31, 1909.

*Tye, Peeples & Jordan, Hardeman, Jones & Johnston,* for plaintiff in error.

*DuPont Guerry, Joseph H. Hall, Warren Roberts,* contra.

POWELL, J.  Warfield & Lee delivered to the Louisville & Nashville Railroad Company at Elizabethtown, Kentucky, a shipment of horses to be transported for them to Macon, Georgia.  At Nashville, Tennessee, an agent of the railway company, on inspecting the shipment, discovered that one of the horses was dead, and

removed it from the car.   Warfield & Lee, as holders of the bill of lading, brought suit against the railway company and recovered a verdict for the value of this horse.   To the overruling of a motion for a new trial the railroad company excepts.   The stock were shipped under the usual live-stock contract, containing numerous limitations upon and exceptions to the carrier's ordinary duties and liabilities.   Among other things, there is a provision that "as a condition precedent to the shipper's right to recover any damages for loss or injury to said animals, he will give the company notice in writing of his claim therefor to the agent of the railroad company or other carrier from whom he received said animals, before said animals are removed from the place of destination above mentioned or from the place of delivery of the same to said shipper, and before said animals are mingled with other animals."   The contract also provided: "Should damage occur for which the said carrier may be liable, the value at the place of shipment shall govern the settlement, in which the amount claimed shall not exceed for a stallion or jack $150; for a horse or mule $75; mare and colt together $100; cow and calf together $35; domestic horned animals $30 each; calves, hogs or sheep $5 each; chickens, ducks and guinea fowls $1 per dozen; geese $2 per dozen, and turkeys $3 per dozen; and other animals $5, which amounts it is agreed are as much as such animals as are herein agreed to be transported are reasonably worth."   Counsel for the plaintiff in error in their brief make some point as to the adequacy of the proof as to the identity of the dead horse and as to its value.   After an examination of the record we dispose of this point summarily by the statement that it is not well taken.   Further facts necessary to an understanding of the points decided will be stated in the course of the opinion.

1.   Counsel for the plaintiff in error, realizing the pertinency of the decision of this court in the case of *Southern Pacific Co.* v. *Crenshaw*, 5 *Ga. App.* 675 (63 S. E. 865), to the facts of the case at bar, have asked leave to review that case; especially in so far as it holds that the State courts have jurisdiction of an action arising under the Hepburn amendment to the 20th section of the interstate-commerce law (Act Feb. 4, 1887, p. 104, 24 Stat. 386, U. S. Comp. St. 1901, p. 3169, Act June 29, 1906, c. 3591, §7, 34 Stat. 593, U. S. Comp. St. Supp. 1907, p. 906).   After hearing

and considering the able argument of counsel, we are of the same opinion still; and the rulings there made are adhered to. The subject is there discussed at such length that we do not deem it advisable to go anew into an elaboration of the points involved.

2. The further point is made that even if the portion of the interstate-commerce act referred to above is applicable and controlling in the present case, and even if, as the law provides, the initial carrier can not exempt itself from the liability imposed in that act by any contract, receipt, rule, or regulation, yet the condition of the contract, that the shipper should, as a condition precedent to his right to sue, give notice of his claim before the animals were delivered or mingled with other animals, is a reasonable, valid, and enforceable regulation. It is not necessary that we should pass upon this point. The horse for the value of which the plaintiff sued has never been delivered or mingled with other stock—he died in transitu. The provision of the contract relied on is therefore not applicable to the facts of the case. As to this question the decision of the Supreme Court in the case of *Southern Ry.* v. *Forrest,* 132 *Ga.* 853 (65 S. E. 93), is directly in point and controlling as a precedent.

3. We have quoted, in the statement of facts preceding this opinion, one of the provisions of the contract of shipment in which there is what purports to be an agreement as to the amount for which the company should be liable in the event of damage to the property. The court charged the jury that in the event the plaintiffs recovered, the amount of their recovery would be determined by the market value of the horse at destination at the time it should have been delivered. The plaintiff in error contends that the court should have submitted to the jury the question whether the parties had not bona fide agreed on the valuation of the property, as a basis for fixing the freight rate. If we pass by the fact that the defendant in the court below pleaded no such agreement, we are nevertheless constrained to hold that the contention is without merit. As was pointed out in *Central Ry. Co.* v. *Hall,* 124 *Ga.* 322 (52 S. E. 679, 4 L. R. A. (N. S.) 898, 110 Am. St. R. 170), this provision of this contract is a mere general limitation as to value, amounting to no more than an arbitrary preadjustment of the damage. It does not appear, either in the contract or otherwise, that the freight charges were based on the values mentioned.

Such limitations of value and preadjustments of the damage were invalid prior to the enactment of the Hepburn act, under which this case was tried, and we find nothing in that act to abrogate the previously prevailing rule as to this matter.

4. The court in effect instructed the jury that the delivery to the carrier and the death of the horse in transitu having been conceded, the carrier would be liable, unless it could show that the death of the horse was occasioned by the act of God, the public enemy, or natural vices or propensities of the animal itself, and without negligence on the part of the carrier. He further told them that if the horse died from natural causes the carrier would not be liable. The plaintiff in error objects to the basis of liability stated. Counsel present the point that under the clause of the Hepburn act involved in this controversy, the initial carrier is liable not as an insurer, but only for "any loss, damage, or injury *caused* by it," etc; and from this he argues that the liability imposed upon the initial carrier by the Federal statute is neither the liability which existed at common law in the absence of special contract, and which made the carrier an insurer save only as to the act of God and the public enemy, and, as to live-stock shipments, save also as to the inherent vices of the animals themselves (see *L. & N. R. Co.* v. *Warfield,* 129 *Ga.* 473, 475, 477 (59 S. E. 234)), nor that liability for which carriers might specially contract at common law, but is a new and distinct liability; that is, a responsibility only for losses, damages, and injuries caused by acts done by itself and connecting carriers. This view does not commend itself to our judgment. As we endeavored to point out in the *Crenshaw* case, supra, we think that Congress intended to adopt, as against the initial carrier, in interstate shipments, the ordinary common-law liability, and to deny the common-law right to contract for special exemptions therefrom. It is true the statute speaks of losses and damages "caused" by the carrier; but it must be kept in mind that the law was dealing with carriers, a class upon which already rested, by general law, an affirmative duty to receive goods, to transport them safely, and to protect them from outside interference. When used of a person or other subject charged with an affirmative duty of care and diligence, or of good conduct so to speak, the word "caused" implies not only active misconduct and deeds of commission, but also passive

· neglect, deeds of omission, and failures to exercise duties faithfully. Carroll *v.* Allen, 20 R. I. 144 (37 Atl. 704) ; Comitez *v.* Parkerson, 50 Fed. 170, 171. Any injury that a common carrier permits to befall the property while in its custody, otherwise than through the act of God or the public enemy, is in a juridic sense caused by it.

One of the exceptions calls attention to the fact that the court instructed the jury that the defendant should not be held liable if it exercised extraordinary care and diligence. This charge is not accurate, but, as it is more favorable to the defendant than otherwise, it furnishes no just cause of exception. We find no error in the record.        *Judgment affirmed.*