## ADAMS EXPRESS COMPANY v. MELLICHAMP.

1. Under the facts hypothetically stated in the first question propounded by the Court of Appeals to this court, the plaintiff was entitled to recover from the express company on account of the negligent loss of a diamond ring while in transportation. The measure of his recovery would be the value of the property lost, and would not be limited to $50 by reason of the fact that the prepared form of express receipt contained a clause which provided that "In consideration of the rate charged for carrying said property, which is regulated by the value thereof and is based upon a valuation not exceeding fifty dollars unless a greater value is declared, the shipper agrees that the value of said property is not more than fifty dollars, unless a greater value is stated herein, and that the company shall not be liable in any event for more

than the value so stated, nor for more than fifty dollars if no value is stated herein."

2. Substantially this case is covered by the decision in *Southern Express Company* v. *Hanaw*, 134 *Ga.* 445; and there is no valid distinction between that case and the one at bar because in the latter the shipper, as the agent of the consignee, himself filled out the express receipt and failed to disclose to the carrier the actual value and contents of the package consigned; nor does this fact in connection with the other facts hypothetically stated by the Court of Appeals differentiate the case at bar from that above cited.

3. So far as it concerns the right of the plaintiff to recover of the common carrier and the extent of such recovery, the case at bar is neither controlled nor affected by the interstate-commerce act as amended June 29, 1906, "and especially section 10 thereof," or by the act of Congress known as the "Elkins act," as amended June 29, 1906. Nor, in view of the provisions of those acts of Congress, does any reason appear why the decision of this court in *Southern Express Co.* v. *Hanaw*, supra, should be overruled or modified.

AUGUST 13, 1912.

Questions of law; from Court of Appeals.   3225.

The Court of Appeals certified the following questions:

"1.   Upon the facts hereinafter stated, is the plaintiff entitled to recover; and if so, should his recovery be limited to $50, or can he recover the actual value of the goods lost?   The Adams Express Company issued, in the city of New York, an express receipt for a small package about one and three-quarters by two inches in size, and sealed at the time it was delivered to the carrier.   The package contained a diamond ring worth from $175 to $300.   The shipper was a jeweler in New York, and for many years had been in the habit of making shipments by express through the defendant in the same manner this shipment was made, to wit:   The shipping clerk would fill out an express receipt containing the following clause:   'In consideration of the rate charged for carrying said property, which is regulated by the value thereof and is based upon a valuation of not exceeding fifty dollars unless a greater value is declared, the shipper agrees that the value of said property is not more than fifty dollars, unless a greater value is stated herein, and that the company shall not be liable in any event for more than the value so stated, nor for more than fifty dollars if no value is stated herein.'   On the receipt was a blank space for the value of the article to be written.   The clerk had general instructions not to value an article shipped unless expressly authorized to do so by his employer.   On the occasion in question the value

was not declared, but the carrier's agent called at the jeweler's place of business, as was the custom, and received from the clerk the package and the receipt with all the blanks filled in except that for the value of the article, which was left open. The receipt was stamped by the carrier's agent, 'Value asked and not given.' But in point of fact the carrier's agent did not in the particular instance in question ask the clerk to declare the value of the article, and was not informed as to the contents of the package. The shipper knew that the express charges were based on the value of the article shipped, and that an article of the value of $50 would be carried for about one third the rate of an article of the same size and weight worth $300, and for about one half the rate of such an article worth $175. The shipper had sent several thousand packages of jewelry over the lines of the defendant company during the last twenty-five or thirty years. Sometimes he would declare the value of the packages, and sometimes he would not. Sometimes the carrier would ask that the value and the contents of the package be disclosed, and sometimes it would make no inquiry as to these matters. The package in question contained a diamond ring that had been previously sent to the jeweler in New York by the plaintiff's husband to be repaired, and it was consigned by the New York jeweler to the plaintiff's husband. The husband knew that under the published authorized rates the express charges would be greater upon an article worth from $175 to $300 than upon one of the same size and weight worth $50. The article was lost in transit, and no express charges were ever paid by or demanded from either the shipper or the consignee by the carrier. The owner has sued the carrier for the value of the goods lost.

"2. Is there any valid distinction between the case in hand and that of *Southern Express Co.* v. *Hanaw,* 134 *Ga,* 445, because in that [this?] case the shipper, as the agent of the consignee, himself filled out the express receipt and failed to disclose to the carrier the actual value and contents of the package consigned; and does this fact in connection with the other facts above stated differentiate the case at bar from the case just referred to?

"3. To what extent is the case in hand controlled and affected by the interstate-commerce act as amended June 29, 1906, and especially section 10 thereof, and by the act of Congress known as the 'Elkins act,' as amended June 29, 1906; and in view of the

provisions of these acts of Congress, should the decision of the Supreme Court in the case above referred to be overruled or modified?"

*Robert C. & Philip H. Alston,* for plaintiff in error.

*Moore & Pomeroy,* contra.

LUMPKIN, J. 1. The answers to the questions propounded by the Court of Appeals in this case are in large part controlled by the decision in *Southern Express Company* v. *Hanaw,* 134 *Ga.* 445 (67 S. E. 944, 137 Am. St. R. 227). In some States the delivery by a common carrier and acceptance by a shipper of a receipt containing a limitation on the liability of the carrier, such as that here involved, is sufficient to make a valid contract. Under the statute and decisions of this State, it is not. It is permissible to make a bona fide valuation of goods. But even the most express contract to arbitrarily limit the liability of a common carrier for the results of negligence, which is but another form of contracting against liability in part for negligence, is prohibited as against public policy. The provision in the receipt under consideration is not a valuation of the particular article to be shipped, but an effort to limit liability in case no valuation is made. It attempts, by means of a printed form of receipt prepared by it in advance, not to arrive at the actual value of any article, but to say that, in the absence of this, "the shipper agrees that the value of said property is not more than fifty dollars, . . and that the company shall not be liable in any event for more than . . fifty dollars if no value is stated herein." It is not even stated that, in the absence of valuation, the value shall be fixed at fifty dollars, if that would do; but only that it is agreed that the value is "not more than" that amount,—whether that sum or less is left open. Likewise it states that the company shall not be liable "for more than fifty dollars," whether for that sum or less is not stated. How can it be said that an agreement which undertakes to fix neither the value nor the amount of the liability, but merely to put a limit upon them, is a bona fide valuation? It is plainly an agreement to limit liability, not to definitely fix value, and it is that which our statute and decisions declare can not be done, as to the negligence of the carrier.

In the *Hanaw* case, above cited, we dealt with the effect of goods having been shipped in New York for transportation into

and delivery in Georgia, of the construction placed by the courts of that State on the effect of such a receipt, and of the right of this State to uphold its own public policy and prohibition of an attempt to contract against the liability of a common carrier for the results of negligence. In the opinion attention was called to the expression in the Civil Code, § 2290, that "the carrier may require the nature and value of the goods delivered to him to be made known," as tending to show that the right of a carrier to require disclosure did not indicate a universal duty to disclose on the part of the shipper, in the absence of such. requirement, on pain of being declared guilty of fraud for that reason alone, and of releasing from all liability. We do not hold that a shipper might not use such artifices or be guilty of such conduct as to amount to a fraud on the carrier, although no inquiry was made by the latter. If the shipper practice any artifice to give a box containing things of value, such as costly jewels, a mean appearance, and thereby to induce the carrier to think it of little or no value, and so prevent him from making inquiries, or deceive him, it may constitute a fraud, although no inquiry is made. So, where a diamond breastpin was put in a paper box, tied with a cotton string, and unsealed, addressed to a young woman at a college for girls, and was sent to the express company's office by a little negro boy ten or twelve years of age, who did not know the contents of the box, and no information was given as to its contents, and only the sum of twenty-five cents was paid for the carriage, these facts were held to be for submission to the jury on the question of fraud, though no inquiry was made. *Southern Express Co.* v. *Everett,* 37 *Ga.* 688.

In Walker *v.* Jackson, 10 Mees. & Wels. 160, 168, Parke, B., said: "I take it now to be perfectly well understood, according to the majority of opinions on the subject, that, if anything is delivered to a person to be carried, it is the duty of the person receiving it to ask such questions about it as may be necessary. If he ask no questions, and there be no fraud to give the case a false complexion, on the delivery of the parcel, he is bound to carry the parcel as it is." Story on Bailments (9th ed.), §· 567.

In the Matter of Express Rates, Practices, Accounts, and Revenues, recently under consideration, the Interstate Commerce Commission were discussing a rule, not of the commission but of the

express company, which provided: that a receipt should be given in a prescribed form; that the shipper should be required to state the value of the shipment, which must be inserted in the receipt; and that if he declined to state the value of the shipment, the agent should write or stamp on the receipt, "Value asked and not given." It was said: "The use of the rubber stamp, although it appears not to have been intentionally provided for that purpose, has resulted in the careless habit on the part of some of the carriers' agents of neglecting to notify the shipper of the necessity for declaring valuation in order to protect his rights, and in the failure to collect the proper charges." It would seem from this that the Interstate Commerce Commission considered that the duty of giving such notice or making inquiry as to the value rested upon the carrier, rather than that a duty of volunteering information as to value in all events rested upon the shipper. In the case at bar it is stated that the carrier's agent stamped upon the receipt, "Value asked and not given," though in point of fact he did not ask the value. It may be pertinently inquired, why did the carrier provide such a stamp, and why did its agent stamp upon the receipt that value had been asked and not given, when this was not the fact, if it thought there was no necessity whatever for inquiry on its part, and that, without this, a failure to state the value would constitute a fraud on the part of the shipper which would relieve it from liability entirely, or limit its liability so as not to exceed fifty dollars?

Counsel for plaintiff in error seem to think that the ruling in the case of Magnin *v.* Dinsmore, 70 N. Y. 410 (26 Am. R. 608), was overlooked by this court in deciding the case of *Southern Express Co.* v. *Hanaw,* because of a remark made in the opinion that in some jurisdictions a· delivery and acceptance of a receipt containing printed words like that under consideration would be held to create a contract, but that we had found no case in which it had been held to constitute a fraud by the shipper. An inspection of 134 *Ga.* 455, 456, will show that reference was made to the much litigated case of Magnin *v.* Dinsmore, as reported both in 62 N. Y. 35 (20 Am. R. 442), and 70 N. Y. 410 (26 Am. R. 608), and that the reference to the latter decision was accompanied by a criticism upon it. In that case it was not held that there was a fraud releasing the company from liability, but that from

the receipt arose a contract to some extent, and beyond that an estoppel by silence. We can not agree with that decision or others like it. If a carrier had no notice of the nature or value of goods shipped, and a shipper made representations on the faith of which the carrier acted in fixing its charges, it might be that the shipper would be estopped, or held to be guilty of fraud, if the representations were untrue. But this makes a very different case from merely not filling a blank in the carrier's receipt by the insertion of a value. If there were other facts showing fraud on the part of the shipper, the omission to fill the blank, or not giving information, might be a circumstance admissible in evidence. But merely omitting to fill the blank left for a statement of value is neither sufficient to prove fraud nor to raise an estoppel against the shipper. If the shipper knew that the charge for carriage was affected by increase in valuation, did not the carrier know it also? Did its agent not know that the value was not written in the receipt? Shall the shipper or consignee be precluded from recovery, because of not filling the blank, but the carrier, knowingly receiving the goods to be carried for hire, escape liability by not making inquiry? In addition to the authorities cited in the *Hanaw* case, 134 *Ga.* 145, see Adams Express Co. *v.* Green, 112 Va. 527 (72 S. E. 102); Stringfield *v.* So. Ry. Co., 152 N. C. 125 (67 S. E. 333).

In the case now, before us there was no misrepresentation on the part of the shipper, no artifice to conceal the character of the shipment, or to give it a mean appearance, or throw the carrier off its guard, or tend to prevent inquiry. The shipper was known to the carrier to be a jeweler in New York who had shipped thousands of parcels during a series of years. The carrier sent its agent to his place of business on this occasion, in order to receive. the package for shipment, as had been its custom. A diamond ring was shipped in a small package which was sealed. The carrier's agent thus either knew or was put on notice that the package probably contained jewelry. He made no inquiry as to its value, though the place for inserting the value was left blank. To hold that the facts stated in the question relieved the carrier, under the name of a contract or of an estoppel, from liability beyond fifty dollars, or that. it would prevent the shipper from recovering at all on the ground that he was guilty of fraud, would be in one

breath to lay down the rule that, the carrier could not by notice in receipts, or even by express contract, relieve itself from liability for loss arising from negligence, and in the next to practically destroy the effect of the rule.

The loss in transit is stated, and it does not appear that there was any evidence to exculpate the carrier from negligence. The effect of the interstate-commerce law will be more particularly referred to in a later division of this opinion.

In answer to the first question propounded by the Court of Appeals we hold, that, under the facts therein hypothetically stated, the plaintiff is entitled to recover in a proper form of action, and that his recovery should not be limited to fifty dollars, but he can recover the actual value of the goods lost.

2. From what has been said above, it follows, that, in answer to the second question propounded by the Court of Appeals, we hold that there is no valid distinction between the case in hand and that of *Southern Express Co.* v. *Hanaw,* 134 Ga. 445, on the ground that in the case at bar the shipper, as the agent of the consignee, filled out the express receipt except as to the blank left for stating the value of the article shipped, and failed to disclose to the carrier the actual value and contents of the package consigned; and we further hold that this fact, in connection with the other facts stated in the first question propounded, does not differentiate the case at bar from the cited case, so as to produce a different result.

3. The third question propounded inquires as to the extent to which the case in hand is controlled or affected by the interstate-commerce act as amended in 1906, and especially by what is known as the "Elkins' act" as amended in 1906; and whether, in view of the provisions of those acts of Congress, the decision of this court in the case of *Southern Express Co.* v. *Hanaw,* supra, should be overruled or modified. To this question we respond that there is nothing in the acts of Congress mentioned in the question propounded which controls or affects the case in hand, or which requires a modification or overruling of the decision cited.

In Pennsylvania Railroad Co. *v.* Hughes, 191 U. S. 477 (24 Sup. Ct. 132, 48 L. ed. 268), decided in 1903, it was held that "while Congress under its power may provide for contracts for interstate commerce, permitting the carrier to limit its liability to

a stipulated valuation, it does not appear that Congress has, up to the present time, sanctioned contracts of this nature; and, in the absence of congressional legislation on the subject, a State may require common carriers, although in the execution of interstate business, to be liable for the whole loss resulting from their own negligence, a contract to the contrary notwithstanding. There is no difference in the application of a principle based on the manner in which a State requires a degree of care and responsibility, whether enacted into a statute or resulting from the rules of law enforced in its courts." In that case a horse was shipped from Albany, New York, to a point in Pennsylvania. The bill of lading contained a limitation of liability to a valuation of $100, which it was conceded would have been held valid in New York, but not in Pennsylvania. Suit was brought in the latter State, a recovery was had for $10,000, and this was sustained. We may assume, therefore, that the interstate-commerce law, as it then stood, did not prevent the application of the State law to the validity of such agreements or to the right of recovery in spite of them. The act of Congress regulating interstate commerce was passed February 4, 1887. 24 Stat. 379 (U. S. Comp. St. 1901, p. 3154), 1 Supp. to Rev. Stat. 529. By the second section thereof it was declared that if any common carrier subject to the provisions of the act should, directly or indirectly, by any special rate, rebate, drawback, or other device, charge, demand, collect, or receive from any person or persons greater or less compensation for transportation of passengers or property than from any other person or persons for a like service, the carrier should be deemed guilty of unjust discrimination, which was prohibited and declared unlawful. By section third it was declared unlawful for any common carrier subject to the provisions of the act to give any undue or unreasonable preference or advantage. Section ten prescribed the penalty for a violation of the act. By the act of March 2, 1889, the original act was amended. 25 Stat. 855 (U. S. Comp. St. 3158), 1 Supp. to Rev. Stat. 684. The tenth section of the original act was so amended as to declare that the willful causing to be done, or suffering or permitting to be done, anything in the act prohibited or declared unlawful, or aiding or abetting therein, or willfully omitting or failing to do any act, matter, or thing in the act required to be done, or causing or willfully suffering or permitting anything

so directed or required by the act to be done not to be done, or aiding or abetting any such omission or failure, should be a misdemeanor. It was further amended by declaring that if any common carrier, or any officer or agent thereof if a corporation, by means of false billing, false classification, false weighing, or false report of weight, or by any other device or means, should knowingly or willfully assist, or willingly suffer or permit, any person or persons to obtain transportation for property at less than the regular rates, such carrier, officer, or agent should be guilty of a misdemeanor. The amendment further declared that any person and any officer or agent of any corporation or company who should deliver property for transportation to any common carrier subject to the provisions of the act, or for whom as consignor or consignee any such carrier should transport property, who should knowingly and willfully, by false billing, false classification, false wieghing, false representation of the contents of the package, or false report of weight, "or by any other device or means, whether with or without the consent or connivance of the carrier, its agent or agents, obtain transportation for such property at less than the regular rates then established and in force on the line of transportation, shall be deemed guilty of fraud, which is hereby declared a misdemeanor." It further declared that inducing a common carrier or its officer or agent to unjustly discriminate in rates, or aiding or abetting the common carrier in unjust discrimination, should be a misdemeanor. With these provisions in the law the decision in Pennsylvania Railroad Co. *v.* Hughes, supra, was rendered, and it was declared that they did not interfere with the administration of the State law in regard to prohibiting limitations of liability for losses arising from negligence.

What is commonly known as the Elkins act of February 19, 1903 (32 Stat. 847, U. S. Comp. St. Supp. 1909, p. 1138), had also been enacted before the decision mentioned above was rendered, though after the case arose. That act and the amendment of 1906 to the interstate-commerce act, to which the Court of Appeals calls attention (34 Stat. 584, U. S. Comp. St. Supp. 1909, p. 1150), did not serve to change the law in respect to contracts limiting liability, as declared in the decision above cited. They extended the provisions of the law. By the act of 1906 express companies were included as common carriers within the meaning

of the law.   It was declared that it should be unlawful for any person, persons, or corporation to offer, grant, or give, or to solicit, accept, or receive any rebate, concession, or discrimination in respect to the transportation of any property in interstate or foreign commerce by any common carrier subject to the act, whereby any such property should by any device whatever be transported at a less rate than the tariffs published and filed.

   This amendment was somewhat broader than the original act and the amendment of 1889, but dealt with the prohibition of unjust discrimination.   It did not permit a limitation by contract of the liability of a common carrier.   On the contrary, so far as any intimation might be drawn from its terms, such intimation would be in opposition to permitting such contracts.   They could easily be made devices for the avoidance of the prohibitions made by Congress.   It was argued that if the shipper who failed to fill the blank in an express receipt, left for the statement of the value, were permitted to recover the actual value of the property lost, it might be used as a means of avoiding the terms of the act.   We think there would be much more danger of this, if shippers and carriers were permitted to make contracts limiting liability without regard to actual value, or if carriers could accomplish the same result because of a printed form of receipt and the leaving unfilled of a blank for the insertion of the value, regardless of actual value.   But whether or not the shipper, or the company, or both may be subject to the penalties provided by the act, this does not prevent the shipper from recovering the value of his property lost by reason of the negligence of the carrier.

   By section seven of the act of 1906 (34 Stat. 595) a common carrier receiving property for interstate transportation is required to issue a receipt or bill of lading therefor, and it is declared that the initial carrier shall be liable to the lawful holder thereof "for any loss, damage, or injury to such property caused by it, or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed; provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing

laws." It can hardly be contended that this provision authorized any limitation of liability by the initial carrier which it did not previously have a right to make. It has been contended that the declaration that the initial carrier shall be liable for "any loss or damage" caused by it or a connecting carrier cut off any pre-existing right, if there were any, to make a contract for the limitation of liability. But the majority of courts which have passed upon this question have held that the purpose of the act was to require the issuance of through bills of lading and to prevent the limitation of liability of the initial carrier to a loss occurring on its own line. Congress was doubtless aware of the conflicting decisions which had been made in regard to the right to limit liability of a common carrier by contract, especially for a loss occurring by a carrier's own negligence, and of the fact that there were different statutes on the subject. Apparently, lest there might be a claim that this section interfered with the pre-existing State laws, the last clause was added, distinctly providing that "nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing laws." Considering the act of 1906 as a whole, we are of the opinion that it did not confer upon a common carrier any right to limit its liability by contract; nor did it interfere with the status of the State laws and the right of recovery under them, as announced in Pennsylvania Railroad Co. *v.* Hughes, supra.

It was contended that the use of the word "fraud" in the act of Congress of 1889 was in conflict with the ruling of this court in the *Hanaw* case. But this is clearly negatived by the fact that the acts declared unlawful by Congress and punishable as a fraud were stated to be so whether they were done with or without the consent or connivance of the carrier. It was a fraud relatively to the public to evade the requirements of the law, and was a public offense. But between the shipper and the carrier it was not intended to declare that an act was a fraud on the part of the former, releasing the latter from liability for damages, whether done with or without its connivance and consent. This legislation was dealing with rates and charges of common carriers, and fraudulent efforts to evade the law in regard to them. It did not set up a new rule by which a carrier could claim to be released from its liability to a shipper. See Chicago etc. Ry. Co. *v.* Solan, 169 U. S. 133 (18

Sup. Ct. 289, 42 L. ed. 688) ; In the Matter of Released Rates, 13 I. C. C. 550; Merchants' Cotton Press etc. Co. *v.* Insurance Company of North America, 151 U. S. 368 (14 Sup. Ct. 367, 38 L. ed. 195) ; Latta *v.* Chicago etc. Ry. Co., 172 Fed. 850 (97 C. C. A. 198),; *Hughes* v. *Atlanta Steel Co.,* 136 *Ga.* 511 (71 S. E. 728) ; *Louisville & Nashville R. Co.* v. *Warfield & Lee,* 6 *Ga. App.* 550, 553 (65 S. E. 308). The amendment of 1910 was enacted after this case began, and was not mentioned in the questions propounded by the Court of Appeals. But what has been said would doubtless apply also to it.

It appears in the statement of facts made in connection with the first question propounded by the Court of Appeals that no express charges had been paid or demanded. It may be that the carrier is not precluded from collecting a proper charge. But this would not affect the question of the liability under consideration.                    *All the Justices concur.*