## ATLANTA AND WEST POINT RAILROAD COMPANY *v.* FAIRBURN MARBLE COMPANY.

1. The following facts, in substance, appeared from the evidence: The agent of a company which had for a number of years shipped marble by railroad (most of it at a valuation of twenty cents per cubic foot, and some at a valuation of forty cents) applied to the agent of a railroad company for a freight rate on rough building-marble between two points in this State, and obtained a rate based on a valuation of twenty cents per cubic foot. He filled out a blank form of bill of lading which he had received from the railroad company, stating the value to be twenty cents per cubic foot. He loaded the car which was fur-

nished, and, under the regulations of the State railroad commission, obtained a rate of freight less than if he had placed a higher valuation upon the marble. There was nothing further sufficient to show that the contract was a mere effort to limit liability, including that for negligence. The shipper later brought suit for damages to the marble, alleged to have arisen from negligence of the railroad company. *Held*, (*a*) The plaintiff was estopped from recovering a value beyond that so fixed. (*b*) The evidence did not authorize a finding that this was a mere arbitrary prearrangement to limit liability.

2. While in a proper case parol evidence may generally be competent to show what transpired between the parties in connection with a shipment over a railroad, in order to determine whether a valuation stated in the bill of lading, which was signed by both parties, was an actual valuation or an arbitrary limitation upon liability which might arise from negligence of the common carrier, where there was a written contract signed by the agents of both parties, it was not competent for the agent of the shipper, on the trial of an action for damages resulting from injuries to the shipment, to testify baldly that he made no agreement as to the value of the property, though admitting that he signed the contract.

3. The facts in this case do not show the perpetration of such a fraud by the shipper upon the railroad company as to require the court to charge as to fraud which would prevent any recovery by the shipper.

4. Although a contract of affreightment, which was signed by both parties, contained a provision that the railroad company issuing it agreed to carry the property shipped to the company's usual place of delivery at the destination named, if on its line, and otherwise to deliver to the next carrier on the route to its destination, and although the property had to pass over the lines of three railroad companies in order to reach its destination, yet in a suit brought for damages, not on the contract, but based on an alleged breach of duty by the first railroad company as a common carrier, and for an alleged overcharge in freight, under the Civil Code (1910), §§ 2777, 2778, it was not incumbent upon the plaintiff, in order to make out its case, to show on which of the railroads the alleged negligence occurred.

5. Under the Civil Code (1910), § 2778, as, under the preceding ruling, the plaintiff was not entitled to recover the full amount claimed by it, no penalty could be recovered; but the recovery, if any, would be limited to the actual loss or damage or overcharge, with interest thereon from the date of the filing of the claim, as in that section provided.

(*a*) Civil Code (1910) § 2770 appears not to be applicable to the present case.

ATKINSON, J., dissents from the rulings announced in the first, second, and third headnotes.

AUGUST 21, 1916.

Action for damages. Before Judge Ellis. Campbell superior court. September 1, 1915.

*Dorsey, Brewster, Howell & Heyman* and *Oscar Parker,* for plaintiff in error.    *J. F. Golightly,* contra.

LUMPKIN, J.    The Fairburn Marble Company recovered a verdict against the Atlanta and West Point Railroad Company.    A motion for a new trial was overruled, and the defendant excepted.

1.    While there is conflict in authority as to the power of a common carrier, by agreement with a shipper, to limit its liability in a case of damages caused by its negligence, in this State a contract to limit the liability of a common carrier for the results of its negligence is held to be contrary to public policy, and invalid. Such a limitation can not be effected either by a direct contract in terms to limit liability, so as to cover the results of negligence, or by arbitrarily fixing in advance a value beyond which the common carrier shall not be liable, without reference to the actual value of the property.    A statement in a bill of affreightment that the carrier shall not be liable beyond a certain amount, because of loss or damage to a thing of a particular character constituting the shipment, as a horse or a mule, or other property, without reference to its actual value, is not binding; nor does it become so if the shipper should sign the contract containing such an effort to arbitrarily limit the recovery for a negligent injury, under the guise of limiting the value of the property, without regard to its actual value.    *Central of Georgia Ry. Co.* v. *Murphey,* 113 *Ga.* 514 (38 S. E. 970, 53 L. R. A. 720) ; *Central of Ga. Ry. Co.* v. *Hall,* 124 *Ga.* 322 (52 S. E. 679, 4 L. R. A. (N. S.) 898, 110 Am. St. R. 170, 4 Ann. Cas. 128) ; *Southern Express Co.* v. *Hanaw,* 134 *Ga.* 445 (67 S. E. 944, 137 Am. St. R. 227), and cases there cited.    No question of interstate commerce is here involved, and therefore no construction by the Supreme Court of the United States, in regard to the acts of Congress on that subject, including the amendment of 1906.

On the other hand, a shipper can not represent to a common carrier that the property is of a certain value, as to which a lower rate of freight is fixed by the State railroad commission than for goods of the same general character but of greater value, cause the carrier to act in reliance upon the truth of such representation and to accept the property for shipment as being of that value, and apply the lower rate of freight to it because of such representation or statement, and then, if loss occurs, claim that it is of a different

valuation from that which he stated it was. *Georgia Southern & Florida Ry. Co.* v. *Johnson,* 121 *Ga.* 231 (48 S. E. 807) ; *Southern Express Co.* v. *Hanaw,* 134 *Ga.* 450, supra; *Central of Georgia Ry. Co.* v. *City Mills Co.,* 128 *Ga.* 841 (58 S. E. 197). As to the two lines of authority, see note to *Adams Express Co.* v. *Mellichamp,* 29 Ann. Cas. (1913D) 976, 981 (138 *Ga.* 443, 75 S. E. 596).

In the case at bar it appeared that the plaintiff had for years been shipping marble generally valued at 20 cents per cubic foot, and sometimes at forty cents; and that the agent of the plaintiff applied to the agent of the defendant for a rate of freight on rough building-marble, between two points. The defendant's agent quoted him a rate on a valuation of twenty cents per cubic foot on rough building stone, in car-load lots. Under the regulations of the railroad commission of the State, which were introduced in evidence, there were different classifications of granite and marble, and the rates of freight were different according to the value. On this occasion the plaintiff had a number of blank forms of bills of lading, which the agent of the railroad company had furnished. After obtaining the rate on a twenty-cents valuation, he filled out one of these forms and inserted in it that value. This was presented to the agent of the railroad company, and was signed by him and by the agent of the plaintiff. There was evidence to show that the rate charged was based on the valuation inserted in the bill of lading by the plaintiff's agent. The evidence showed that the shipper's agent not only inserted this valuation in the bill of lading, but also loaded the car. Whether he closed and sealed it is not clear. It did not appear that the agent of the railroad company had equal means with the agent of the plaintiff of seeing the marble and estimating its quality or value, or that he actually saw it. If the agent of the plaintiff loaded the car, placed in the bill of lading a valuation, and tendered it to the carrier as a basis of action, he could no more mislead the carrier by that means than he could by oral representation of the value; and if the carrier accepted his written representation of value and acted upon it, not as a mere arbitrary means of limiting its liability but as an actual valuation on which a freight rate was based, the plaintiff would be estopped from setting up that the property was of a greater value.

There was not sufficient evidence to warrant the jury in finding

that this was a mere arbitrary prearrangement to limit liability, and not an actual valuation by the shipper, accepted by the carrier.

2.   While in proper cases parol evidence may be competent to show what transpired between the parties, with a view of determining whether there was an actual valuation or an arbitrary limitation upon liability arising from negligence of a common carrier, the contract was written and signed by both parties, and it was not competent to ask the agent of the plaintiff, while on the stand as a witness, "What agreement, if any, did you make with Mr. Moore [the agent of the defendant] as to the value of twenty cents per cubic foot?" And also, "What agreement was made as to the value of that marble, and what contract was made with the railroad company? Was there any agreement made between you and the company about the valuation of that marble?" Each of these questions was answered in the negative. Perhaps the questions may have been intended to show what took place between the parties with a view to determining whether the written contract which was made was for the purpose of an actual valuation, or amounted to a limitation on liability for the results of negligence. The form of the questions went beyond that point, and inquired if the plaintiff made any agreement as to value, when there was one in writing.

3.   The facts of this case did not show the perpetration of such a fraud upon the railroad company as to require the court to charge as to fraud which would prevent a recovery at all. A valuation made by a shipper and accepted by a carrier, which makes a rate in reliance thereon, does not alone constitute such a fraud as will relieve the carrier from all liability, although there may be evidence that the value so fixed was less than the actual value of the property. *Central of Georgia Ry. Co.* v. *Hall*, 124 *Ga.* 322 (6), 329 (supra); *Southern Express Co.* v. *Hanaw*, 134 *Ga.* 445 (6), 458 (supra); Civil Code (1910), § 2744.

4.   This suit was not brought for a breach of contract, but for an alleged breach of duty by a common carrier. It sounded in tort, not in contract. It was also claimed that the carrier made an overcharge in freight, and failed to settle the same within sixty days after a sworn claim had been presented, under the Civil Code (1910), §§ 2777, 2778. The contract of affreightment contained a provision that the company issuing it agreed to carry the property

shipped to the company's usual place of delivery at the destination named, if on its line, otherwise to deliver to the next carrier on the route to its destination; and recited that it was mutually agreed, as to each carrier over all or any portion of the route to the destination, that every service performed under such bill of affreightment should be subject to all the conditions contained therein or printed thereon. It was contended that there were three carriers between the initial point and the point of destination; and that it was incumbent upon the plaintiff, in order to make out his case, to show on which road the alleged negligence occurred which caused the injury. Under the code sections above cited, and under the bill of lading, it was not incumbent upon the plaintiff, in order to recover, to show which one of the three connecting carriers was negligent and caused the damage. He could sue the first carrier. If, under the Civil Code (1910), § 2777, it would be any defense to the defendant to show that the injury was actually caused by another one of the carriers, the burden would be upon the defendant to show it, not upon the plaintiff. *Way* v. *Southern Ry. Co.*, 132 *Ga.* 677, 679 (64 S. E. 1066).

5. As it is held that the plaintiff was not entitled to recover the amount it claimed, under the Civil Code (1910), § 2778, it was not entitled to recover damages as therein provided. If it recovers at all, its recovery is by that section limited to the actual loss or damage or overcharge, with interest thereon, where the full amount claimed is not recovered. Without discussing separately each of the numerous grounds of the motion for a new trial, some of the rulings and charges to the jury were not in accordance with what has been said above. If the plaintiff was estopped from recovering at a higher valuation than twenty cents per cubic foot, evidence as to the actual valuation was immaterial. If there were evidence authorizing a submission to the jury of whether or not it was so estopped, and whether the contract was on actual valuation or an arbitrary limitation upon liability, evidence of the actual value would be admissible.

*Judgment reversed. All the Justices concur, except Atkinson, J., dissenting.*