## CENTRAL OF GEORGIA RAILWAY COMPANY *v.* YESBIK.

1. Under the interpretation placed upon the act of Congress, approved June 29, 1906, amending § 20 of the interstate-commerce act, commonly called the Carmack amendment, where a bill of lading is issued by a railroad company for an interstate shipment over several connecting lines of railroad, the remedy, under that statute, of the holder of the bill of lading, for damages caused by delay in transporting the goods, is not exclusively against the initial carrier, but extends to all the connecting carriers over the lines of which the goods are transported. The liability is that imposed by the act, as measured by the original contract of shipment so far as it is valid under the act.

2. The Federal statute supersedes the statute of this State (Civil Code § 2752), in so far as it conflicts with the Federal statute and applies to interstate shipments.

No. 209. MAY 15, 1917.

Certiorari; from the Court of Appeals.

On July 25, 1913, the Louisville and Nashville Railroad Company through its agent at Mobile, Ala., upon receipt of a car-load of bananas, issued a bill of lading to the Fruit Dispatch Company, whereby the fruit was consigned to Joe Yesbik at Albany, Ga., routed via Montgomery and Central of Georgia Railway Company, which latter company had an agency at Albany, Ga. When delivered to the consignee at the place of destination the bananas were in a damaged condition, and were sold by the consignee at a loss. Subsequently the consignee instituted in the city court of Albany an action for damages against the Central of Georgia Railway Company. In addition to what is heretofore stated, the petition alleged that the defendant received the bananas in good condition, and that they should have been delivered to the plaintiff at Albany, as early as eight o'clock a. m. on July 27, 1913, but were not delivered until July 29, 1913, and that on account of defendant's delay in delivery the bananas were injured. At the appearance term the defendant filed a demurrer upon general and special grounds. The plaintiff offered an amendment to his petition, add-

49

ing a second count. The amendment was disallowed, and thereafter the court on oral motion dismissed the petition on the ground that the shipment was an interstate shipment falling within the provisions of what is known as the Carmack amendment to the act of Congress relating to interstate commerce, and that the act of Congress, as amended, superseded all State laws with reference to interstate shipments by common carriers, thereby rendering inapplicable the provisions of the Civil Code, § 2752, of the State of Georgia, which authorizes suits against common carriers, upon bills of lading issued by connecting carriers. The plaintiff assigned error upon the ruling disallowing the amendment, and upon the judgment dismissing the petition. On review the Court of Appeals held that the amendment was properly disallowed, but reversed the judgment of dismissal of the action. The defendant, Central of Georgia Railway Company, brought the ruling last stated for review on writ of certiorari.

*Pottle & Hofmayer,* for plaintiff in error.

*John Henry Pool,* contra.

FISH, C. J. The question for decision relates only to the dismissal of the original petition, and the correctness of the ruling depends upon a proper construction and application of the Carmack amendment to the act of Congress relating to interstate commerce. The case, having originated before the passage of the act of March 4, 1915 (Federal Statutes Annotated, Supp. 1916, p. 124), known as the Cummins amendment, is unaffected by the provisions of that act. It was declared in the Carmack amendment, "That any common carrier, railroad, or transportation company receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered, or over whose line or lines such property may pass; and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company, from the liability hereby imposed: Provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law." Interstate Commerce Act, § 20 a. In terms this en-

actment deals with liability of initial carriers for damage or injury to property received by them upon bills of lading, for interstate shipment through instrumentality of their individual agencies or those of their connecting carriers, whether the damages are claimed by the consignor, or the consignee, or other person lawfully holding the bill of lading. But before the interpretation of the Carmack amendment by the Supreme Court of the United States in the case of Adams Express Company v. Croninger, 226 U. S. 491 (33 Sup. Ct. 148, 57 L. ed. 314, 44 L. R. A. (N. S.) 257) the proper construction of the whole act, in view of the proviso therein, was a serious question. See *Adams Express Co.* v. *Mellichamp,* 138 *Ga.* 443 (75 S. E. 596, Ann. Cas. 1913D, 976) ; *Adams Express Co.* v. *Chamberlin-Johnson-DuBose Co.,* 138 *Ga.* 455 (75 S. E. 601) ; *Post & Woodruff* v. *Atlantic Coast Line R. Co.,* 138 *Ga.* 763 (76 S. E. 45) ; Watkins on Shippers and Carriers (2d ed.), 434, and note. The foregoing decisions of this court were rendered shortly before the decision of the Supreme Court of the United States in Adams Express Company v. Croninger, supra. That case was an action by the consignor named in a receipt or bill of lading issued by the Adams Express Company at its office in Cincinnati, Ohio, for a small package containing a diamond ring to be delivered to a named consignee at Augusta, Ga., to recover the full value of the ring on account of failure to deliver. The defendant filed a plea alleging that it was engaged as a common carrier in interstate commerce, within the provisions of the act of Congress above mentioned; that it had duly filed with the interstate-commerce commission schedules showing its rates and charges from Cincinnati to Augusta, which were alleged to be reasonable; that the rates were reasonably graduated according to the value of the article being transported, and the plaintiff knew that the charges were based upon the value of the package shipped, and that defendant required the value to be declared by the shipper, and that if he did not declare the value when he delivered the package for shipment the rate charged would be based upon the valuation of fifty dollars. It was also alleged that the package when received by defendant was sealed, and defendant did not know its contents or value, and would not have received it for carriage except under the lawful published rate. The receipt or bill of lading showed no value, but contained a stipulation in these words, "In considera-

tion of the rate charged for carrying said property, which is regulated by the value thereof and is based upon a valuation of not exceeding fifty dollars unless a greater value is declared, the shipper agrees that the value of said property is not more than fifty dollars, unless a greater value is stated herein, and that the company shall not be liable in any event for more than the value so stated, nor for more than fifty dollars if no value is stated herein." The plea was disallowed. Error was duly assigned, and the judgment was reversed, the court holding, that the provisions of the Carmack amendment are not violated by the plain provisions in the bill of lading, basing the charges on the value of articles transported, and charging a higher rate for increasing liability as value is declared. In the course of the opinion there was an elaborate discussion of the act in question, which may appropriately be reproduced as follows: "This amendment came under consideration in Atlantic Coast Line *v.* Riverside Mills, 219 U. S. 186 [31 Sup. Ct. 164, 55 L. ed. 167, 31 L. R. A. (N. S.) 7], but the opinion and judgment was confined to that provision of the act which made the initial carrier liable for a loss upon the line of a connecting carrier, the property having been received under a bill of lading which confined the liability of the initial carrier to loss occurring upon its own line. The significant and dominating features of that amendment are these: First: It affirmatively requires the initial carrier to issue 'a receipt or bill of lading therefor,' when it receives 'property for transportation from a point in one State to a point in another.' Second: Such initial carrier is made 'liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it.' Third: It is also made liable for any loss, damage, or injury to such property caused by 'any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass.' Fourth: It affirmatively declares that 'no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed.'

"Prior to that amendment the rule of carrier's liability, for an interstate shipment of property, as enforced in both Federal and State courts, was either that of the general common law as declared by this court and enforced in the Federal courts throughout the United States, Hart *v.* Pennsylvania Railroad, 112 U. S. 331 [5

Sup. Ct. 151, 28 L. ed. 717] ; or that determined by the supposed
public policy of a particular State, Pennsylvania Railroad *v.*
Hughes, 191 U. S. 477 [24 Sup. Ct. 132, 48 L. ed. 268] ; or that
prescribed by statute law of a particular State, Chicago etc. Rail-
road *v.* Solan, 169 U. S. 133 [18 Sup. Ct. 289, 42 L. ed. 688].
Neither uniformity of obligation nor of liability was possible until
Congress should deal with the subject. The situation was well de-
picted by the Supreme Court [Court of Appeals] of Georgia in
*Southern Pacific Company* v. *Crenshaw, 5 Ga. App.* 675, 687, 63
S. E. Rep. 865, where that court [by Powell, J.] said: 'Some
States allowed carriers to exempt themselves from all or a part of
the common-law liability, by rule, regulation, or contract; others
did not; the Federal courts sitting in the various States were fol-
lowing the local rule, a carrier being held liable in one court when
under the same state of facts he would be exempt from liability in
another; hence this branch of interstate commerce was being sub-
jected to such a diversity of legislative and judicial holding that it
was practically impossible for a shipper engaged in a business
that extended beyond the confines of his own State, or for a car-
rier whose lines were extensive, to know without considerable in-
vestigation and trouble, and even then oftentimes with but little
certainty, what would be the carrier's actual responsibility as to
goods delivered to it for transportation from one State to another.
The congressional action has made an end to this diversity; for the
national law is paramount and supersedes all State laws as to the
rights and liabilities and exemptions created by such transactions.
This was doubtless the purpose of the law; and this purpose will
be effectuated, and not impaired or destroyed, by the State court's
obeying and enforcing the provisions of the Federal statute where
applicable to the facts in such cases as shall come before them.'

"That the legislation supersedes all the regulations and policies
of a particular State upon the same subject results from its gen-
eral character. It embraces the subject of the liability of the car-
rier under a bill of lading which he must issue, and limits his
power to exempt himself by rule, regulation, or contract. Almost
every detail of the subject is covered so completely that there can
be no rational doubt but that Congress intended to take posses-
sion of the subject and supersede all State regulation with refer-
ence to it. Only the silence of Congress authorized the exercise of

the police power of the State upon the subject of such contracts. But when Congress acted in such a way as to manifest a purpose to exercise its conceded authority, the regulating power of the State ceased to exist. Northern Pacific Ry. v. State of Washington, 222 U. S. 370 [32 Sup. Ct. 160, 56 L. ed. 237]; Southern Railway v. Reid, 222 U. S. 424 [32 Sup. Ct. 140, 56 L. ed. 257]; Mondou v. Railroad, 223 U. S. 1 [32 Sup. Ct. 169, 56 L. ed. 327, 38 L. R. A. (N. S.) 44].

"To hold that the liability therein declared may be increased or diminished by local regulation or local views of public policy will either make the provision less than supreme or indicate that Congress has not shown a purpose to take possession of the subject. The first would be unthinkable, and the latter would be to revert to the uncertainties and diversities of rulings which led to the amendment. The duty to issue a bill of lading and the liability thereby assumed are covered in full; and though there is no reference to the effect upon State regulation, it is evident that Congress intended to adopt a uniform rule and relieve such contracts from the diverse regulation to which they had been theretofore subject.

"What is the liability imposed upon the carrier? It is a liability to any holder of the bill of lading which the primary carrier is required to issue, 'for any loss, damage, or injury to such property caused by it,' or by any connecting carrier to whom the goods are delivered. The suggestion that an absolute liability exists for every loss, damage, or injury, from any and every cause, would be to make such a carrier an absolute insurer and liable for unavoidable loss or damage though due to uncontrollable forces. That this was the intent of Congress is not conceivable. To give such emphasis to the words, 'any loss or damage,' would be to ignore the qualifying words, 'caused by it.' The liability thus imposed is limited to 'any loss, injury, or damage caused by it or a succeeding carrier to whom the property may be delivered,' and plainly implies a liability for some default in its common-law duty as a common carrier.

"But it has been argued that the non-exclusive character of this regulation is manifested by the proviso of the section, and that State legislation upon the same subject is not superseded, and that the holder of any such bill of lading may resort to any right of

action against such a carrier conferred by existing State law. This view is untenable. It would result in the nullification of the regulation of a national subject, and operate to maintain the confusion of the diverse regulation which it was the purpose of Congress to put an end to. What this court said of § 22 of this act of 1906 in the case of Texas & Pac. Ry. *v.* Abilene Cotton Mills, 204 U. S. 426 [27 Sup. Ct. 350, 51 L. ed. 553, 9 Ann. Cas. 1075] is applicable to this contention. It was claimed that that section continued in force all rights and remedies under the common law or other statutes. But this court said of that contention what must be said of the proviso in § 20, that it was 'evidently only intended to continue in existence such other rights or remedies for the redress of some specific wrong or injury, whether given by the interstate-commerce act, or by State statute, or common law, not inconsistent with the rules and regulations prescribed by the provisions of this act.' Again, it was said of the same clause, in the same case, that it could 'not in reason be construed as continuing in a shipper a common-law right the existence of which would be inconsistent with the provisions of the act. In other words the act can not be said to destroy itself.'

"To construe this proviso as preserving to the holder of any such bill of lading any right or remedy which he may have had under existing Federal law at the time of his action, gives to it a more rational interpretation than one which would preserve rights and remedies under existing State laws; for the latter view would cause the proviso to destroy the act itself. One illustration would be a right to a remedy against a succeeding carrier, in preference to proceeding against the primary carrier, for a loss or damage incurred upon the line of the former. The liability of such succeeding carrier in the route would be that imposed by this statute, and for which the first carrier might have been made liable."

The foregoing interprets the provisions of the act hereinabove quoted in its entirety and construes the proviso as referring to only such rights or remedies as might exist in favor of the holder of the bill of lading under the existing Federal law at the time of the action, thereby excluding or superseding any right of action in favor of the holder of the bill of lading that might exist under the State statute. Under this ruling the holder of the bill of lading would, in virtue of the Carmack amendment, be authorized to sue

not only the initial carrier but any succeeding carrier on whose line the damage might be done. The recent case of Georgia, Florida & Alabama Railway Co. *v.* Blish Milling Co., 241 U. S. 190 (36 Sup. Ct. 541, 60 L. ed. 948), was where a consignor in Indiana, who had received an order-notify bill of lading for certain flour consigned to himself at Bainbridge, Ga., instituted an action at the place of destination against the last connecting carrier for damages on account of injury to the flour ascertained when the car was being unloaded at the place of destination. In the opinion, after stating the facts, it was said: "There are only two questions presented here, and these are thus set forth in the brief of the plaintiff in error: '1st. That the plaintiff's exclusive remedy was against the initial carrier, the Baltimore & Ohio Southwestern Railroad Company, under the Carmack amendment of section twenty of the Hepburn bill. 2nd. That under the stipulation in the bill of lading providing for the filing of claims for loss or damage the action was barred.' The first contention is met by repeated decisions of this court. The connecting carrier is not relieved from liability by the Carmack amendment, but the bill of lading required to be issued by the initial carrier upon an interstate shipment governs the entire transportation, and thus fixes the obligation of all participating carriers to the extent that the terms of the bill of lading are applicable and valid. 'The liability of any carrier in the route over which the articles were routed, for loss or damage, is that imposed by the act as measured by the original contract of shipment so far as it is valid under the act.'" Among the cases cited in support of the ruling was that of Adams Express Co. *v.* Croninger, supra. This ruling that the plaintiff's exclusive remedy was not against the initial carrier is not to be understood as requiring a ruling in this case that the plaintiff would have a remedy under the State law (Civil Code, § 2752), which authorizes suits against the last connecting carrier receiving the goods "as in good order;" but it must be understood as holding, that, under the bill of lading providing for carriage of the goods over several connecting lines, the plaintiff's remedy under the Federal statute would not be exclusively against the initial carrier, but would extend also to any subsequent connecting carrier on whose line the injury occurred.

The case of Southern Ry. Co. *v.* Prescott, 240 U. S. 632 (36

Sup. Ct. 469, 60 L. ed. 836), was one involving an interstate shipment, and the suit was against the last connecting carrier. The question was whether, under the facts in the case, there was liability of the defendant to the plaintiff as warehouseman. The ruling was that this was a Federal question, and the facts alleged would state a liability against the defendant for negligence; and it appearing that the goods were destroyed by fire, the burden was upon the plaintiff to show that the fire was the result of negligence attributable to the defendant. The case of Atchison, Topeka & Santa Fé Railway Co. v. Harold, 241 U. S. 371, 378 (36 Sup. Ct. 665, 60 L. ed. 1050), is another instance of a suit by the holder of a bill of lading for an interstate shipment against the last connecting carrier, in which there was a recovery by the plaintiff, and the judgment was sustained. In the course of the opinion it was said: "It is not disputable that what is known as the Carmack amendment to the act to regulate commerce (Act of June 29, 1906, c. 3591, § 7, 34 Stat. 593) was an assertion of the power of Congress over the subject of interstate shipments, the duty ·to issue bills of lading and the responsibilities thereunder, which in the nature of things excluded State action." See also, Judson on Interstate Commerce (3d ed.), §§ 503, 504. The case now under consideration is where the consignee is holder of the bill of lading and sues the last connecting carrier for damages to the goods .resulting from delay in transportation, alleging in effect that the injury occurred on the defendant company's line of railway. The motion to dismiss the petition was based on the ground that the plaintiff's remedy was only by virtue of the State law, which was superseded by the Federal statute. According to the construction of the Carmack amendment by the Supreme Court of the United States in the cases cited above, the trial court was correct in holding that the State law was superseded; but this does not mean that, under the principle in Adams Express Co. v. Croninger, supra, as applied in the other cases cited above, the plaintiff was without a remedy, under the Federal statute, against the defendant as the last connecting carrier receiving the goods. In his petition the plaintiff did not expressly declare upon the State or Federal statute, but merely pleaded the facts relied on to show a liability against the last connecting carrier. As the facts alleged will suffice, under the rulings above mentioned, to show liability under the Federal

act, the court should have applied that law without the statute being specially pleaded. *Gainesville Midland Railway* v. *Vandiver*. 141 *Ga.* 350 (80 S. E. 997) ; *Louisville & Nashville R. Co.* v. *Barrett*, 143 *Ga.* 742 (85 S. E. 923). Under this view it was erroneous for the trial court to dismiss the petition. The Court of Appeals held that the State statute (Civil Code, § 2752) was not superseded by the Federal statute, and that under that law a recovery could be had against the last connecting carrier receiving the goods as in good order. As we have seen, the State statute was superseded, but the petition stated a cause of action under the Federal statute as applied to the common-law liability, without regard to the State law. We therefore concur in the judgment of reversal, but not on the ground upon which it was placed.

*All the Justices concur.*